*** Filed ***
10:41 PM, 15 Apr, 2026
U.S.D.C., Eastern District of New York

**STATE OF NEW YORK**
**PUBLIC EMPLOYMENT RELATIONS BOARD**

_____

In the Matter of

**UNITED FEDERATION OF TEACHERS, LOCAL 2,**
**AFT, AFL-CIO,**

Charging Party,

-and- **CASE NO. U-32479**

**BOARD OF EDUCATION OF THE CITY SCHOOL**
**DISTRICT OF THE CITY OF NEW YORK,**

Respondent.

_____

**ROBERT T. REILLY, GENERAL COUNSEL (ARIANA A. DONNELLAN of**
**counsel), for Charging Party**

**KAREN SOLIMANDO, EXECUTIVE DIRECTOR OF LABOR RELATIONS**
**(ALLISON S. BILLER of counsel), for Respondent**

**BOARD DECISION AND ORDER**

This case comes to us on exceptions filed by the Board of Education of the City

School District of the City of New York (District) to a decision of an Administrative Law

Judge (ALJ), granting an improper practice charge alleging that the District violated

§ 209-a.1 (d) of the Public Employees' Fair Employment Act (Act).[1]  The charge alleged

that the District violated the Act when it unilaterally began placing a "flag" in its computer

system next to the names of unit employees represented by the United Federation of

Teachers, Local 2, AFT, AFL-CIO (UFT), who have been the subject of discipline,

allegedly causing those employees to be denied opportunities for transfers and

permanent assignments.  Originally, the ALJ dismissed the charge, finding that the

flagging process was a duplicate, digitized version of certain documents in employees'

_____

[1] 54 PERB ¶ 4522 (2021).

personnel files and that the manner in which the District maintains employees'

personnel files was not a mandatory subject of negotiations.[2]  On exceptions to that

decision, the Board remanded the matter to the ALJ for further development of the

record.[3]  On remand, the ALJ found that the "flagging" impacted terms and conditions of

employment, and that the District had violated the Act by instituting the flagging system.

On April 7, 2022, oral argument was held before the Board.

<div align="center">EXCEPTIONS</div>

The District has filed nine exceptions to the ALJ's decision.  In its first two

exceptions, the District asserts that the ALJ incorrectly found a violation of § 209-a.1 (d)

of the Act on the basis that the evidence did not support her conclusion that employees

are unable to inquire through the UFT "what specific documents are linked to a flag."  To

the contrary, the District contends, the testimonial evidence was that the UFT could

obtain this information through the District and could check its accuracy by inspecting

the complete paper personnel file.[4]

The District's third and fourth exceptions reject the ALJ's finding that neither an

employee nor her UFT representative has access to the Galaxy system and neither is

able to personally view the flagged documents and whether they actually reflect the

contents of the documents in the personnel file.  Rather, the District maintains that the

ability to view the documents as maintained in the personnel file allows the UFT and its

members to verify the flagged documents.  Additionally, the District asserts that the UFT

---

[2] 51 PERB ¶ 4561 (2018).
[3] 52 PERB ¶ 3009 (2019).
[4] Exceptions 1-2.

did not request such documents be produced, as such documents are redundant of the personnel file, and thus "there is no reason why the [District] would not provide this information."[5]

In exceptions five and six, the District argues that the ALJ erred in finding that "the record is clear that flagging affects principals' decisions whether to select a teacher in his or her school." To the contrary, the District maintains that "the record shows that the purpose of the flagg[ing] procedure is to give principals the opportunity to consider or reconsider their decision after they have viewed the flagged documents."[6] The District further claims that no evidence was introduced that any teacher failed to obtain a transfer on the basis that they had been "flagged" in the Galaxy system.

The District further alleges that there is no contractual right to a transfer, and that "flagged" employees have the same right to apply for a transfer as those who have not been flagged, and that there is no basis to require the digitization of the entire personnel files. Additionally, the District contends that principals have multiple ways of learning about disciplinary histories, and, further, just as principals are not required to view the paper files, so too "they are not required to view the flagged documents" before making their hiring decision.[7]

The District further excepts to the ALJ's finding that "when viewing flagged documents, principals are viewing only negative information contained in an employees personnel file, without any information that might counterbalance the negative

---

[5] Exceptions 3-4.
[6] Exception 5.
[7] Exception 6, quoting 54 PERB ¶ 4522, at 4652-4653.

information such as years of positive observation reports or other positive material that may affect a principal's decision."[8]  Finally, the District excepts to the ALJ's finding that "the record shows that, in certain cases, letters annexed to a flag will be inaccurate if an employee is found, in arbitration, to have not engaged in the conduct set forth in a file letter, or to have engaged in a less severe misconduct."[9]

The UFT supports the ALJ's decision and contends that no basis has been demonstrated for reversal.

For the reasons given below, we affirm the ALJ's decision.

## FACTS

The facts in this matter are fully set out in the ALJ's thorough decision and are only addressed here as necessary to decide the exceptions.  On March 15, 2012, the District announced plans to initiate a new method of "flagging" negative work history in an online disciplinary support system that is linked to and accessible through its "Galaxy" computer system, an online budgetary system that provides a table of organization for all District offices and schools.

The flagging procedure makes information regarding an employees' disciplinary history with the District available to school principals when an employee is applying for a new position.  The information is only available to principals if they indicate in Galaxy that they intend to hire an individual for a position in their school.[10]  This process is

---

[8] Exception 7, quoting 54 PERB ¶ 4522, at 4653.
[9] Exception 8, quoting 54 PERB ¶ 4522, at 4653.
[10] Although the parties refer to the "hiring" of individuals, most of the individuals in question are already District employees, who are simply applying to transfer to a position at a different school or are seeking a permanent assignment.  Some applicants may also be former District employees, who are seeking to return to the District.

referred to as "intending" an employee in Galaxy. If an employee's name has been flagged, a "flag symbol" will appear next to the employee's name when a principal "intends" the individual's name in Galaxy.[11] The appearance of the "flag symbol" indicates that there is information that is available to the principal by clicking on the flag. One or more digitized documents may be linked to a flag and can be viewed by the "intending" principal. However, the District has represented that the decision whether or not to click on the flag symbol and see the attached documents remains for the principal; the District "considers the *optional* review of the disciplinary support unit flag by hiring Principal/supervisor as an opportunity to learn about an employee's prior history-similar to checking reference[s] before making a hiring decision."[12]

When an "intending" principal moves to proceed, a dialogue box appears, headed "Notification of Prior Disciplinary Action." This dialogue box does not provide any hyperlink to pdf documents. It states that the prospective hire/transfer "has been disciplined (on occasion(s) due to a prior report(s) of allegations of misconduct that have been substantiated.") The box instructs that for the intending principal to obtain more information she should "contact your Senior Field Counsel or CFN HR Director."[13]

The dialogue box then states: "If you wish to proceed with the action to intend to bring this individual onto your budget please click below to acknowledge that you are aware of and acknowledge the prior disciplinary action concerning this individual."[14]

---

[11] District Brief at 6, citing Jt Ex 1. As the "flag symbol" is not reproduced in the cited Exhibit, and the system is not available to the UFT, we adopt the District's characterization for purposes of this decision.
[12] *Id* (citing Tr, at 83-84 (Rodi) emphasis in original).
[13] Jt Ex 1.
[14] *Id.*

"Intending" principals are given the option in the Galaxy system of proceeding with the hire or of cancelling the hire.[15]  In the event that the principal continues with "intending" the individual to the job, he or she is required to acknowledge awareness of the prior disciplinary action concerning the individual.[16]

At the bottom of the dialogue box, two buttons allow the "intending" principal to either "Apply" (thereby submitting a final decision either to proceed with or to cancel the hire) or to "Cancel" (thereby allowing the "intending" to pursue further information, either through the flag symbol and its attached documents, or the resources specified in the dialogue box).[17]

Katherine Rodi, Director of the District's Office of Employee Relations, oversees the Disciplinary Support Unit (DSU), which manages the District's online disciplinary support system.  The DSU tracks employee discipline and is responsible for flagging employee names when appropriate.  The DSU began flagging employee names in approximately May of 2012.

Rodi testified that the DSU will place a flag next to an employee's name in the Galaxy system only when two criteria are met.  First, a substantiated report of discipline or misconduct must have been issued by one of the District's three investigatory bodies: the Office of the Special Commissioner of Investigation, the Office of Special Investigations, or the Office of Equal Opportunity.[18]  Second, the DSU must have

---

[15] *Id.*
[16] *Id.*
[17] Jt Ex 1.
[18] Tr, at 73, 76.

evidence that the employee received a copy of the relevant disciplinary document.[19] That evidence normally consists of the employee's signature on the letter to be flagged, or on a mail receipt.[20] If those criteria have been met, the DSU will manually flag the employee's name in the Galaxy system and will link a copy of the disciplinary document in question to the flag.

Rodi explained the several steps that must occur before a document is issued that can lead to the flagging of the employee's name in Galaxy. Initially, one of the three investigatory bodies mentioned above must have conducted an investigation that resulted in a report substantiating an allegation of wrongdoing against the employee. Next, the principal must meet with the employee to discuss the report. If the principal issues a disciplinary letter as a result of the meeting, that letter may serve as a basis for a flag. As set forth above, the DSU must also have evidence that the employee received a copy of that letter.[21] Rodi testified that only documents that are in an employee's personnel file can serve as a basis for flagging an employee's name. If an employee files a rebuttal to the letter of discipline, the rebuttal letter is also linked to the flag in Galaxy.[22] Disciplinary letters issued by principals due to misconduct that have not been substantiated by an investigatory body, such as a letter admonishing an employee for lateness, may not serve as a basis for flagging an employee's name and cannot be annexed to a flag.[23]

---

[19] Tr, at 73.
[20] Tr, at 81.
[21] Tr, at 90.
[22] Tr, at 81.
[23] Tr, at 108.

Other documents that can be linked to a flag are those resulting from a disciplinary proceeding held pursuant to § 3020-a of the New York State Education Law (EL), but only if the employee was brought up on charges based on misconduct that is set forth in a disciplinary letter that meets the criteria for imposing a flag.  An award or settlement issued as part of such a proceeding can be attached to a flag, but only if the award or settlement includes a finding or admission of culpability relating to the initial disciplinary letter.[24]

A flag remains next to an employee's name as long as the underlying disciplinary letter remains in the employee's file.[25]  Rodi testified that the DSU will remove a flag or a document linked to a flag if an award issued in a EL § 3020-a disciplinary proceeding dismisses the charges against an employee based on a finding that the alleged misconduct did not occur, and if the award directs the District to remove the underlying disciplinary letter from the employee's personnel file.[26]  If an award finds that the misconduct occurred, but is insufficient for dismissal, the flag will remain next to the employee's name, because the underlying letter finding misconduct remains in the employee's personnel file.  The DSU will also remove a flag if a settlement requires it to remove the disciplinary letter on which the flag was based.  Similarly, the DSU will remove a flag if an employee successfully pursues a grievance challenging a letter on which a flag is based, and the grievance decision directs the District to remove that

---

[24] Tr, at 90-91.  The EL § 3020-a disciplinary charges are not linked to a flag.  Tr, at 109.
[25] Tr, at 113.
[26] Tr, at 95, 98.

letter from the employee's personnel file.[27]

According to the District, all documents linked to a flag are already included in employees' personnel files. Although the UFT is unable to view the flags and the documents linked to them, it does not dispute that the linked documents are intended to be limited to the discipline related documents in each individual's personnel files. Those paper files are maintained at the school where an employee is currently employed, or was last employed. Because the District has not digitized the entire contents of employee personnel files, principals cannot view them online. To view a copy of an employee's personnel file, a principal considering whether to hire an employee must contact the school where the employee's file is kept, and request that a copy be made and sent to him or her. A principal should see, in an employee's personnel file, any document that has been flagged in Galaxy.

Rodi testified that the flag serves a purely informational function in assuring that a hiring principal is aware of flagged information. She further testified that flagging an employee's name does not restrict an employee's ability to apply for a new position or impose any restriction or limitation on the employee. Rodi testified that principals are not required to take, or refrain from taking, any action when an employee's name has been flagged; they may, if they so choose, hire an employee whose name is flagged.[28] Rodi testified that she personally knows principals who have hired employees whose

---

[27] Tr, at 113. The collective bargaining agreement between the parties includes a grievance procedure that allows employees to seek the removal of disciplinary letters from their personnel files.
[28] Tr, at 87-88.

names are flagged in Galaxy.[29]

Other than those working in the DSU, only an employee's current principal and the principal who intends to hire the individual can view whether an employee's name is flagged in Galaxy.[30]  However, before their names are flagged, employees have received a copy of the letter of misconduct that is linked to the flag and have been advised that the document has been placed in their personnel file.

Amy Arundell, the UFT's Director of Personnel, testified that she first learned of the flagging system in October 2012 when Mathew Polisheck, a unit member, called her and told her that a principal rescinded his offer of a position and told him that he could not hire him because there was a flag on his file in Galaxy.[31]  After Polisheck contacted her, Arundell received complaints from other employees who stated that they had interviewed for a position and were later told that they could not be hired, or that the principal had reconsidered his or her decision, because a flag was placed on their file in Galaxy.[32]  In Polisheck's case, Arundell learned that the principal decided not to hire him after learning of the existence of a substantiated case of discipline against Polisheck and a EL § 3020-a disciplinary proceeding.[33]

Prior to the implementation of the flag symbols, principals could only view online an employee's service history, which shows whether an employee was rated effective or ineffective in his or her yearly evaluation, and whether an employee was suspended.[34]

---

[29] Tr, at 123.
[30] Tr, at 83.
[31] Tr, at 154-155.
[32] Tr, at 161.
[33] Tr, at 180.
[34] Tr, at 89, 126.

To view an employee's disciplinary history, an "intending" principal would have to request the employee's personnel file from the employee's school.[35]

<div align="center">DISCUSSION</div>

A public employer violates its duty to negotiate in good faith, in violation of § 209-a.1 (d) of the Act, when it unilaterally implements a change to a mandatorily negotiable term or condition of employment.[36] We have long held that procedures for transfer and transfers themselves "are a mandatory subject of negotiations."[37]

On remand, the ALJ reassessed her prior finding that Rodi's testimony demonstrated that "[e]mployees may inquire through the UFT whether their name has been flagged in Galaxy *and what documents are linked to a flag.*"[38] As the ALJ correctly noted, we held that, although Rodi's testimony supports the first part of her finding, it does not support the latter part of that finding, and hence we remanded this issue for a full review of the record.[39]

On her review of the record, the ALJ concluded that the record does not support a finding that employees may inquire through the UFT to learn what specific documents

---

[35] Tr, at 78.

[36] *See, eg, Town of Islip v NYS Pub Empl Relations Bd*, 23 NY3d 482, 484, 47 PERB ¶ 7006 (2014); *Patchogue-Medford Union Free Sch Dist*, 30 PERB ¶ 3041, 3094 (1997); *Monticello Cent Sch Dist*, 22 PERB ¶ 3002, 3008 (1989), *enforced* 22 PERB ¶ 7022 (Sup Ct, Albany County 1989).

[37] *City of Buffalo*, 9 PERB ¶ 3024, 3040 (1976); *see also White Plains PBA*, 9 PERB ¶ 3007, 3009 (1976) ("Assignment of 'both permanent jobs and work details on the basis of preference and seniority is a term and condition of employment and thus a mandatory subject of negotiations.'"), quoting *City of Albany [Albany Firefighters]*, 7 PERB ¶ 3142, 3147 (1974).

[38] 52 PERB ¶ 3009, at 3043 (emphasis added by the ALJ).

[39] 51 PERB ¶ 4561, at 4764.

are linked to a flag."[40]

From there, the ALJ moved to consideration of the impact of this finding on the claims before her. The ALJ's findings of fact and law here are instructive:

> The record is clear that flagging affects principals' decision whether to select a teacher for a position in his or her school. Principals see flags, and the documents linked to a flag, when they are in the process of selecting a teacher for a position in their school. At that point, the decision to select a teacher is not final. In fact, the purpose of the flagged procedure is to give principals the opportunity to consider, or reconsider, their decision once they have viewed the flagged documents.
>
> Although the flagged documents are included in an employee's official school file, the record shows that principals are not required to, and often do not, request a copy of a teacher's entire official file before finally deciding whether to select an employee for a position in their school. That is apparent from the fact that the record shows that only *if* a principal makes that request does the principal receive a copy. It is also apparent from the fact that the flagging system was created for that reason; that is, principals had placed employees in their school without being aware of the employees' negative disciplinary history involving serious matters.
>
> Further, when viewing flagged documents, principals are viewing only negative information contained in an employee's file, without any information that might counter-balance the negative information, such as years of positive observation reports or other positive material, that may affect a principal's decision whether or not to select an employee for a position. The record also shows that, in certain cases, letters annexed to a flag will be inaccurate if an employee is found, in arbitration, to have not engaged in the conduct set forth in a file letter, or to have engaged in a less severe misconduct.[41]

---

[40] 54 PERB ¶ 4522, at 4652. As neither the District nor the UFT submitted additional evidence, the ALJ relied on the evidence at the hearing before her; in her review, she based her determination on the limited information Arundell received from Rodi, that is, whether specific individuals had been flagged, and not the documents attached to the flags. *Id.*

[41] 54 PERB ¶ 4522, at 4563.

As the ALJ found, Rodi testified that flagged letters are only removed from Galaxy if the arbitration award specifically directs that the letter be removed from a teacher's official file. Therefore, a principal may view a flagged letter when the conduct underlying that letter has been held in arbitration to either not have occurred or to have occurred in a different manner or degree than that which is set forth in the flagged letter, if the arbitration award does not specifically direct removal of the letter.

The ALJ's factual determinations, particularly her credibility determinations, "are generally entitled to great weight unless there is objective evidence in the record compelling a conclusion that the credibility finding is manifestly incorrect."[42] No such objective evidence has been raised before us. The ALJ reasonably exercised her discretion in taking a closer look at the specific testimony of both Arundell and of Rodi on remand. Moreover, both parties had the opportunity to submit further evidence on the factual issues. Neither availed themselves of the opportunity, and they are now bound by the evidence they chose to submit.

We affirm the ALJ's finding that the District made a change to the procedures to be used to fill a position, a mandatory subject of negotiations. Prior to the implementation of the "flagging" system, an "intending" principal who wished to see an employee's disciplinary history would request the employee's full personnel file from the employee's school. The personnel file would include not only the employee's negative

---

[42] *Pine Valley Cent Sch Dist*, 51 PERB ¶ 3036, 3160 (2018), quoting *Village of Scarsdale*, 50 PERB ¶ 3007, n 51 (2017), *confd sub nom Village of Scarsdale v NYS Pub Empl Relations Bd*, 55 PERB ¶ 7008 (2d Dept 2022). *See also Pleasantville Union Free Sch Dist*, 51 PERB ¶ 3024, 3100 (2018); *Village of Endicott*, 47 PERB ¶ 3017, 3051 (2014).

disciplinary history, but also any positive history, such as positive performance evaluations, commendations from managers, and awards, that might counterbalance the disciplinary history.  Under the new "flagging" system, however, such positive history is no longer available to "intending" principals, who receive only negative information on employees they intend to hire.

Moreover, prior to the change at issue here, whether to look at the personnel file at all was left to an "intending" principal's discretion.  Now, the negative portion of an employees' personnel file is fed automatically to "intending" principals regardless of whether they express a desire to see the employee's personnel file or not.  As the District concedes, this data is meant to be taken into consideration by the "intending" principals as they make their hiring decisions.

These changes, both the automatic nature of providing the information and providing solely the negative portions of the employee's personnel file, represent changes to the prior procedure as to effectuating transfers within the District.  These changes have an adverse effect on employees' terms and conditions of employment as the "intending" principle receives a purely negative, decontextualized version of the personnel file, unlike in the past, where "intending" principals, if they saw the personnel file at all, would see the full personnel file, including both positive and negative history.  Consistent with our prior precedent, we find these unilateral changes to the procedure used to fill positions affect terms and conditions of employment, and are a mandatory

subject of bargaining.[43]  For that reason, we affirm the ALJ's finding that the District violated the Act.

We do not find the adoption of flagging to be in and of itself a disciplinary action. The record is clear that teachers who have been flagged remain eligible to apply for transfers just as do their colleagues who have not been.  Rather, we grant relief because of the unilateral change of procedures impacting terms and conditions of employment—here, by procedurally incentivizing principals to peruse and assess prior discipline, or, at a minimum, requiring them to acknowledge the existence of such discipline.  For these reasons, we find that the unilateral adoption of this new procedure without negotiation with the UFT violates § 209-a.1 (d) of the Act.

The charge also states that "[i]n addition, none of the affected employees would have an opportunity to review the information upon which the 'flag symbol' was entered or to ascertain or contest whether the disciplinary action the entry is based on actually occurred or is in error."[44]  Later in the charge, the UFT asserts that the District "failed to bargain in good faith over a mandatory subject of bargaining—employee discipline, *transfer* and other personnel actions—and therefore committed an improper practice

---

[43] *See Niagara Falls Police Captains and Lieutenants Assn*, 33 PERB ¶ 3058, 3161 (2000) ("We have held . . . that the procedures to be used to fill a position . . . are a mandatory subject of negotiation."), citing *Schenectady Patrolmen's Benevolent Assn*, 21 PERB ¶ 3022 (1988); *Dutchess County BOCES Faculty Assn, NEA/NY*, 17 PERB ¶ 3120 (1984), *confd sub nom Matter of Dutchess County Bd of Coop Educ Serv,* 122 AD2d 845, 19 PERB ¶ 7018 (2d Dept 1986); *White Plains Police Benevolent Assn*, 9 PERB ¶ 3007 (1976).  *See also Dutchess Community College and County of Dutchess*, 46 PERB ¶ 3009, 3016 (2013).  *See generally City of Watertown v State of NY Pub Empl Relations Bd*, 95 NY2d 73, 33 PERB ¶ 7007 (2000) ("bargaining is mandatory if the procedures qualify as a "term and condition" of employment").
[44] Charge, ¶ 6.

under the Act."[45]  Among the relief sought, the charge requested an order "compelling the Board to negotiate in good faith with the UFT regarding the implementation, procedures for and impact of the employee 'flag symbols.'"[46]

We note that we have long held that "the right of an employee to review his personnel file bears a direct and significant relationship to working conditions, including possible demotion, promotion, and discipline, rendering the demand mandatorily negotiable."[47]  Here, the District has culled out the disciplinary history portion of the personnel file, and made only that portion easily and immediately available for principals to consult in determining whether or not to finalize the decision to grant an employee's request to transfer, or an application to a promotional position.  Indeed, by requiring the "intending" principal to acknowledge that she is aware that the employee has a disciplinary history, the District has created an incentive for the "intending" principal to consult the digitized materials.

The convenience of accessing the digital excerpt from the personnel file, rather than taking the steps to obtain the full paper file, mean that the excerpted digital materials are more likely than not to be used in place of the full file in making decisions as to transfers, promotions and other lateral hiring or recall decisions.  However, as the UFT has alleged, and the District has admitted, neither the UFT nor the individual

---

[45] Charge, ¶ 9 (emphasis added).

[46] Charge, ¶ 12.

[47] *City of Schenectady*, 21 PERB ¶ 3022, 3049 (1988); *Town of Carmel,* 29 PERB ¶ 3053, 3121-3122, n 3 (1996) ("notice of entries in personnel files" a mandatory subject). *See  generally Niagara Falls Police Club (Drinks-Bruder)*, 52 PERB ¶ 3007, 3029 (2019) (union satisfied its statutory obligation by successfully resolving a previously filed unit-wide grievance in the matter so that everyone, including the charging party, had the opportunity to review their personnel files).

employee has the ability to access the "flag symbol" and the materials attached thereto, to ascertain if they are in fact materials that have been properly placed, and properly remain, in the personnel file.

The reasons that underlay our finding in *City of Schenectady* that access to paper personnel files is a mandatory subject apply with full force and vigor to these digitized disciplinary history excerpts, which are every bit as likely, if not more so, to affect working conditions, including transfer, promotion and other opportunities. We therefore find that the District violated § 209-a.1 (d) of the Act by unilaterally instituting the flagging system without having negotiated with the UFT as to notification to employees that they have been "flagged" and access to the materials attached to the "flag symbol" sufficient to permit verification that such materials were placed in the employees' personnel files and properly remain within them.

These same factors lead us to conclude that the flagging system is not, as the District argued, a mere optional "opportunity to learn about an employee's prior history-similar to checking reference[s] before making a hiring decision." Moreover, the District concedes that this data is meant to be taken into consideration by the "intending" principals as they make their hiring decisions.

Taken as a whole, then, the flag, the dialogue boxes encouraging the intending principals to either review the flagged documents, seek information through Senior Field Counsel or the CFN HR Director, and the requirement, prior to finalizing or canceling the transaction, that the "intending" principal acknowledge the existence of the disciplinary history, effectively amount to the addition of a new procedure with respect to

such transfers.

Additionally, the flagging process may reasonably be found to establish a new criterion for such appointments, that is, the consideration of the applicant's disciplinary history. As we have long held, a "criterion for appointment or promotion is a managerial prerogative beyond the scope of mandatory negotiation, if applicable only to prospective employees or to future promotion of current employees."[48] The same considerations and the same result applies to criteria for transfers.[49] Accordingly, we find that the UFT did not establish a violation of § 209-a.1 (d) of the Act by requiring principals to consider the disciplinary history of applicants for transfer or promotional positions.

However, we affirm the ALJ's finding that the "flagging" process is a mandatory subject of negotiations to the extent that the process affects terms and conditions of employment by denying employees notice that they have been "flagged" and an opportunity to view the materials attached to the "flag symbol" and to contest its appropriateness for inclusion as part of the personnel file. To the extent that the District has imposed a new criteria for transfer and promotional applications, the consideration of the applicant's disciplinary history, we find that no violation of the Act has been established. We note that our decision is made without prejudice to the right to bargain upon demand the impact of this decision.

---

[48] *Rensselaer City Sch Dist*, 13 PERB ¶ 3051, 3084-3085 (1980). *See also City of Niagara Falls*, 33 PERB ¶ 3058, 3161-3162 (2000); *City of Buffalo*, 29 PERB ¶ 3023, 3053 (1996) (qualifications non-mandatory); *Addison Cent Sch Dist*, 13 PERB ¶ 3060, (1980) (criteria for promotion non-mandatory); *see generally Levitt v Bd of Collective Bargaining of the City of NY*, 79 NY2d 120, 128, 29 PERB ¶ 7516 (1992).
[49] *City of Schenectady*, 21 PERB ¶ 3022, at 3050-3051.

IT IS, THEREFORE, ORDERED that the District will forthwith:

1.      Negotiate in good faith with the UFT procedures by which unit employees who have been the subject of discipline are notified that they have been "flagged" in its "Galaxy" computer system, are able to verify the accuracy and propriety of inclusion of supporting documentation attached to the flag symbol, and seek removal of such materials as are not properly part of the personnel file; and

2.      Sign and post the attached notice at all physical and electronic locations customarily used by it to post notices to unit employees.

DATED:  June 13, 2022
         Albany, New York

_____
John F. Wirenius, Chair

_____
Anthony Zumbolo, Member

_____
Rosemary A. Townley, Member

# NOTICE TO ALL EMPLOYEES

**PURSUANT TO**
**THE DECISION AND ORDER OF THE**

**NEW YORK STATE**
**PUBLIC EMPLOYMENT RELATIONS BOARD**

**and in order to effectuate the policies of the**

**NEW YORK STATE**
**PUBLIC EMPLOYEES' FAIR EMPLOYMENT ACT**

**we hereby notify all employees of the Board of Education of the City School District of the City of New York (District) in the unit represented by the United Federation of Teachers, Local 2, AFT, AFL-CIO (UFT), that the District will forthwith:**

1. Negotiate in good faith with the UFT procedures by which unit employees who have been the subject of discipline are notified that they have been "flagged" in its "Galaxy" computer system, are able to verify the accuracy and propriety of inclusion of supporting documentation attached to the flag symbol, and seek removal of such materials as are not properly part of the personnel file.

**Dated . . . . . . . . .**      **By . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**

on behalf of the **BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK**

*This Notice must remain posted for 30 consecutive days from the date of posting, and must not be altered, defaced, or covered by any other material.*

DIRECT/RODI

Your next witness, please.

MS. BILLER: I would like to call Ms. Rodi, please.

JUDGE BLASSMAN: Please approach and I will swear you in.

Do you swear or affirm to tell the truth and nothing but the truth in this proceeding?

THE WITNESS: I do.

JUDGE BLASSMAN: Thank you.

Can you please state your full name for the record.

THE WITNESS: My full name is Katherine Rodi, R-O-D-I.

DIRECT EXAMINATION

BY MS. BILLER:

Q. By whom are you employed by?

A. I'm employed by the New York City Department of Education.

Q. What capacity?

A. I'm the director of the office of Employee Relations.

Q. How long have you held that position?

DIRECT/RODI

A.          I held that position for two and a half years.

Q.          And prior to being the director of Employee Relations, what other job titles have you held within the Department of Education?

A.          I was an agency attorney, I was a senior counsel and I was the director of the Disciplinary Support Unit.

Q.          As director of Employee Relations, what are some of your job duties and responsibilities?

A.          I oversee several units.  I oversee the Office of Personnel Investigation, I oversee the Office of Employee Relations, I oversee the Office of Safety and Health, I oversee it, it is not really an office, but the Disciplinary Support Unit work.

Q.          Can you explain to us what the Disciplinary Support Unit is?

A.          It is a unit within my office that manages the on-line system that is the Disciplinary Support System.

DIRECT/RODI

And what we do, we check and track and eventually flag folks. We check older discipline, older substantiated reports, we review them, we track them and then if all the qualifications that we build together are met, then we may flag a person.

Q. Can you give us the years that you were responsible for overseeing the disciplinary support unit?

A. I was hired in June of 2012. I started in July, early July of 2012. Then I was promoted to the director of Employee Relations in January of 2013 and then I subsumed DSU into my current work.

JUDGE BLASSMAN: DSU?

THE WITNESS: The disciplinary support unit.

JUDGE BLASSMAN: So, since when have you been overseeing disciplinary support.

A. It has basically been under my portfolio since July of 2012.

Q. Are you aware when the flagging was implemented, began to be implemented?

DIRECT/RODI

A.    I was invited to a meeting about disciplinary support projects, I want to say it was like April of 2012 at that meeting there were all the senior counsel, I was in the role of senior counsel at the time.  So, all the senior counsel, there where I think there were superintendents, other random DOE staff and we got a presentation about the DSU.

By the time I started in July at least a couple of hundred people had been flagged.  So, I think it started in May or June of 2012.

Q.    Are you familiar with the Galaxy system?

A.    Yes.

Q.    What is the Galaxy system?

A.    The Galaxy system is actually a budgetary system that provides table of organization for all DOE offices and schools.

So, it is a budget driven system that basically tracks all current employees by the order by where they work.

DIRECT/RODI

Q.　　　What, if any, involvement do you have with the Galaxy system?

A.　　　As being part of Human Resources, I use the Galaxy system a lot.　To check people's status and then the DSU, the Disciplinary Support project, it linked to Galaxy, but it is not like a part of Galaxy.

JUDGE BLASSMAN:　It is linked to Galaxy?

THE WITNESS:　It is linked to Galaxy.

Q.　　　Are you familiar with the Disciplinary Support Unit flag?

A.　　　Yes, I am.

Q.　　　I know we heard much talk about it.

Can you briefly define for us what the disciplinary support unit flag is?

A.　　　Sure.　The flag is a reflection of what we pulled into the DSU system.　The system is a web based system.

It is set up so that no one can be accidentally or easily flagged.　It is set up so that if I want to kind of open a folder

DIRECT/RODI

for a person, I have to put in their name or an identifier such as a Social Security number, an employee I.D. and then that person's name would be automatically populated from the Galaxy data.

Once I have the person's information up I can then attach documents to the person's name.

Just attaching a document to a person's name doesn't flag them. What it has to do it has to meet two qualifications.

Number one, there has to be a substantiated report of discipline issued from an investigatory body.

Then second there has to be a letter of discipline that has been -- that has evidenced that the person received the discipline.

Once both those two factors are met a person is then manually flagged.

So, even if the two documents were both there, unless someone went in there and looked at it, a person couldn't be flagged. It is not, the system doesn't read