UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

*** Filed *** 16 Apr, 2026
02:36 PM, U.S.D.C., Eastern District of New York

ANNABELLE MATYAS, DAISY BADILLO, and DAHLIA MENDOZA,

        Plaintiffs

                          **DOCKET NO. 25-CV-1861(OEM) (MMH)**

     -against-

                          **PLAINTIFFS' OPPOSITION TO**
                          **DEFENDANTS' MOTION TO DISMISS**

THE DEPARTMENT OF EDUCATION
 OF THE CITY OF NEW YORK, MELISSA
AVILES-RAMOS, Chancellor; and
KATHERINE RODI, Director of Employee Relations,

        Defendants

_____x

## PRELIMINARY STATEMENT

This case arises from Defendants' systemic retaliation and discrimination in enforcing a

COVID-19 vaccine mandate that unlawfully favored exemptions/accommodations for certain

religious beliefs while forcing Plaintiffs here to go on unpaid leave, placed into a "Problem

Code" database after fabricating charges of "misconduct", then terminated Plaintiffs based on

these fabrications. Plaintiffs were never offered any due process hearing or a dialogue on what

their religious beliefs actually were, or how these beliefs could be accommodated. Defendants

are covering up these inconvenient facts by denying and thus attempting to invalidate Plaintiffs'

claims without any proof. Defendants' motion stands on sparse merits arguments,

misrepresenting the law on religious beliefs and undue hardship. Instead, Defendants lean on

baseless procedural objections and an irrelevant defense of the vaccine mandate's legality—a

1

claim that Plaintiffs do not raise. What Plaintiffs here argue is that the COVID Vaccine Mandate ("CVM") *as applied* to Plaintiffs was lawless and unconstitutional. Plaintiffs have properly pleaded a violation of Section 1983, a failure to accommodate, and deprivation of 1st, 5th, and 14th Amendment rights in violation of NYCHRL NYSHRL, and Section 1983 due process.

Indeed, Defendants did not address a single fact stated in the Complaint pages 9-20. As they cite no defenses, Plaintiffs' claims must be taken as valid and proceed to discovery. Plaintiffs request that each and every argument, cause of action, background fact and Exhibits 1-34 in their Complaint be incorporated in full into the arguments made here by reference. Defendants' Motion To Dismiss ("Motion") must be denied in full.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. Lynch v. City of New York, 952 F.3d 67, 74 (2d Cir. 2020); Littlejohn v. City of New York, 795 F.3d 297, 306 (2d Cir. 2015). To survive a motion to dismiss, a complaint need only "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This standard "does not require 'detailed factual allegations,'" but demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The assessment 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct. Twombly, 550 U.S. at 556, 127 S.Ct. 1955; see Iqbal, 556 U.S. at 678, 129 S.Ct. 1937." Lynch, 952 F.3d at 75. A complaint should not be dismissed simply because it appears recovery is remote or unlikely. Twombly, 550 U.S. at 556. Where, as here, a plaintiff brings claims of employment discrimination, the facts "alleged in the complaint need not give plausible support to

the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory motivation."  Littlejohn, 795 F.3d at 311; see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86-87 (2d Cir. 2015). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they plausibly give rise to an entitlement to relief. Iqbal, 129 S. Ct. at 1950. In ruling on a motion to dismiss, a court may consider the facts asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits and any documents incorporated in the complaint by reference. Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010).

In support of this Opposition, all arguments include all of the Plaintiffs. All three Plaintiffs pursued their protected rights to their sincere religious beliefs pursuant to the 1st, 5th and 14th Amendments,

**PLAINTIFFS SUFFICIENTLY ESTABLISH AND RAISE ISSUES OF FACT AS TO THEIR DISCRIMINATION AND HOSTILE WORK ENVIRONMENT PURSUANT TO THE 1ST, 5TH AND 14TH AMENDMENTS, NYSHRL AND NYCHRL, WARRANTING DENIAL OF DEFENDANTS' MOTION TO DISMISS**

Plaintiffs argue here that the hostility by Defendants toward the Plaintiffs in this matter defeats neutrality at every level of review, which suggests pre-textual discrimination. This case is a prima facie case of retaliatory discrimination, 1st, and 14th Amendment deprivation, violation of the Equal Protection Clause, Establishment Clause, Free Exercise Clause, Takings Clause pursuant to the 5th Amendment and deprivation of Constitutional rights as a tenured public employee. The Complaint used 34 exhibits to show facts and evidence in support of these deprivations of protected rights. Plaintiffs engaged in protected activity and exhausted their administrative remedies available to them, although they were hampered by the narrow timelines, cut-off time of submissions, secrecy and false claims made by the Defendants. Tenured

employees of the NYC Department of Education have Constitutional property and Liberty rights to their jobs. Cleveland v Loudermill (470 US 532 (1985)) was a landmark 1985 U.S. Supreme Court case that established that public employees with a property interest in their jobs are entitled to a "pre-termination" hearing, which requires notice of the charges and an opportunity to respond. The Court held that this minimal hearing, coupled with subsequent post-termination procedures, satisfies the due process requirements of the Fourteenth Amendment. This ruling prevents public employees from being fired summarily without a chance to defend themselves, even if the hearing is not a full-blown trial. Plaintiffs accommodation requests should have been given strict scrutiny, and they should not have been punished by Defendants placing a "Problem Code" on their fingerprints.

Defendants have been defending their terminations and lack of accommodations given to Plaintiffs here and in multiple cases involving public employees, based upon claims made from whole cloth. The Citywide Panel did not comply with any available Constitutional rights. See

**The Citywide Panel and the Final Judgment in Kane-Keil-New Yorkers For Religious Liberty**
https://advocatz.com/2025/01/25/new-york-state-court-of-appeals-issues-an-amended-judgment-in-new-yorkers-for-religious-liberty-et-al-v/

and,

**The City of New York and the NYC Department of Education Never Intended on Honoring Requests For Religious Exemptions From Getting the COVID Vaccine By Municipal Workers**
https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from-getting-the-covid-vaccine-by-municipal-workers/

The testimony by Defendant Rodi, Director of Employee Relations and the Office of Personnel Investigations ("Problem Code"), and also head of the 'General Committee' who denied all

applications for accommodations sight unseen, is key to the denial of Defendants' Motion To

Dismiss in this matter:

"With further questioning, Rodi explains that the general committee members were under pressure to reopen in-person schooling and couldn't do so without replacing at least some of the DOE employees who were barred from entering school buildings. Rodi describes the flood of requests for accommodations the DOE received during the fall of 2021:

*We received it from teachers, from custodians, from school food workers, from principals, from assistant principals, from, you know, name the person, name the job. And the fact is that we needed to run a school system . . .*

She describes denying accommodation requests in order to "resign" employees so that they could be replaced:

*[T]he only option was [sic] had was to resign them from the system without any bias so that we could hire other teachers. Because, again, we had a school to run.*

Later [Attorney Austin] Graff questions Rodi about the details of what happened to each individual's request for an accommodation:

*Q. Okay. So when you received an application for religious exemption, what did you review to make a determination whether to grant or deny?*

*A. We made sure that the person had appropriately applied in the right area. A number of people would check religious exemption, but they were really looking for a medical exemption.*

*We also made sure that they actually submitted something with their application, because some people included blank sheets of paper. And, then, if it was a medical—if it was in the wrong place, we—we immediately advised them so that they could reapply or reapply in the right place. If it was a blank piece of paper, we immediately advised them so that they could submit appropriate documentation.*

*And then, other than that, we then—we reviewed to make sure they had submitted something to support, you know, that it was religious in nature. We didn't judge what it was. And even if it was just a piece of paper that they wrote out. And then we denied their request.*

According to this description, the "individual review" the applicants received was simply a check to make sure they hadn't mistakenly submitted a blank piece of paper or a medical accommodation request."

These actions by Defendants are deliberate, misleading, and made in bad faith. No hearing was

ever held where Plaintiffs could be heard on their reasons for not getting vaccinated against

COVID. All three Plaintiffs have been denied their procedural and substantive due process pursuant to Section 1983.

After a Problem Code is placed on an employee's personnel file, disciplinary action is triggered, namely EDL §3020 and §3020-a, with all Constitutional protections and procedures allowable under the 14th Amendment. See Complaint EXHIBITs 1, 2. Plaintiffs never waived their rights to these benefits of their tenured status. The DOE should never have proceeded with termination, as they could not proceed due to the un-waived procedural defect cited here (see, Hackett v. Milbank, Tweed, Hadley & McCloy, 86 N.Y.2d 146,154-55, 630 N.Y.S.2d 274,654 N.E.2d 95 [1995]). Fraudulent concealment of a secret waiver of the rights of tenured employees to procedural and substantive due process, the tenure law/Education Law 3020-a(2)(a) and Constitutional rights of property and liberty by the NYC Department of Education cannot be sanctioned. The same can be said about the Problem Code.

In 2012 the UFT filed a Public Employment Relations Board (PERB) complaint against the NYC DOE for their continued attempts to keep their Problem Codes a secret. See **EXHIBIT 35** PERB U-32479**.** As part of that litigation, Katherine Rodi was deposed on November 3, 2015. Ms. Rodi described the procedure of placing an employee on the Code/flag due to misconduct. She testified that the information from the investigators was used to designate an employee as guilty of some heinous act, and therefore a Principal would not hire this applicant. She added that "No Respondent will ever see their flag". Defendants never gave any DOE employee information about, or notice of, a problem code on their personnel file.. **EXHIBIT 36,** Problem Code-RODI Testimony attached.

The DOE thwarts anyone from seeing their Problem Code because they do not want to give any reasons for placing it on a person's personnel file. There usually are none. The Affirmation of

Mallory O'Sullivan is simply untrue in all aspects. In the case of Philomena Brennan, who filed in 2009 an Article 78 to remove the problem code from her file, Supreme Court Judge Alice Schlesinger ordered the DOE to submit to the Court their procedures for removal of the Code. The DOE settled the case, and took Ms. Brennan off the Code – all to keep the procedures secret. See Brennan v NYC Dep't of Education, Index No. 112977/2009, **EXHIBIT 37.**

As Ms. Combier stated in her Declaration (See Ex. 1, Complaint) she could easily access the Code in a personnel file while at the UFT. The Problem Code is public, and defamatory. See Knox v New York City Dept. of Educ. 2012 NY Slip Op 07610 Decided on November 13, 2012 Appellate Division, First Department ("Knox was entitled to a name-clearing hearing due to "stigma plus" defamation by the DOE. This occurred because a report with findings of dishonesty was disseminated, making it difficult for her to get future employment in NYC public schools.)

In Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006) the U.S. Supreme Court ruled that Ms. White's suspension for 37 days from her job operating a forklift was retaliatory discrimination and a jury awarded her compensatory damages.

*"The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their status, while the anti-retaliation provision seeks to prevent an employer from interfering with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. To secure the first objective, Congress needed only to prohibit employment-related discrimination. But this would not achieve the second objective because it would not deter the many forms that effective retaliation can take, therefore failing to fully achieve the anti-retaliation provision's purpose of "[m]aintaining unfettered access to statutory remedial mechanisms," Robinson v. Shell Oil Co., 519 U. S. 337, 346."*

To establish a claim for hostile work environment under the NYSHRL, a plaintiff must demonstrate that the offensive conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. See Harris v. Forklift S s., 510 U.S. 17, 21 (1993); Gallagher v. Delaney, 139 F. 3d 338, 347 (2d Cir. 1998). "The conduct must be intimidating, hostile, or offensive, with discriminatory intimidation, ridicule, and insult

permeating the workplace." Gallagher, 139 F.3d at 347. "All of the circumstances must be considered: a reasonable person would have to find the environment hostile or abusive, and the victim must have subjectively so perceived it." Id. Each Plaintiff in this matter engaged in protected activity and completed all administrative remedies in seeking an accommodation for their religious reliefs.

Unfortunately, there is no precise test for making a determination on whether an environment is hostile or abusive, and in making such determination, the Court must look at all of the circumstances including the frequency of the discriminatory conduct, its severity, whether it unreasonably interferes with an employee's work performance, and what psychological harm resulted. See Thomas v. New York City Dep't of Ed, 938 F. Supp, 2d 334, 357 (E.D.N.Y. 2013); Sotomayor, 862 F. Supp. 2d at 260-61. Where reasonable jurors could disagree as to whether alleged incidents of insensitivity or harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law. See Whidbee v. Garzelli Food Specialties Inc., 223 F.3d 62, 71 (2d Cir. 2000).

The NYCHRL created a new paradigm designed to more effectively eliminate and redress discrimination in the workplace. This necessitates the courts to conduct an independent analysis of NYCHRL claims. See Mihalik, 715 F.3d at 109 (2d Cir. 2013); Russo v Presbyterian Hospital,, 972 F. Supp. 2d at 449-50 (E.D.N.Y. 2013., 715 F.3d 102, 109-10 (2d Cir. 2013). The NYCHRL was revised and has been interpreted by this Circuit to redress discrimination that may not rise to the level of severe or pervasive. Id. at 110. Thus, to demonstrate a discrimination claim under the NYCHRL, a plaintiff need only demonstrate by a preponderance of the evidence that he or she has been treated less well than other employees because of his or her protected

characteristic. The severity and pervasiveness of the conduct is not relevant to liability, but only to the issue of damages. Id. In their Complaint, the facts show not only a systemic attack on Plaintiffs' present and future employment, their religious beliefs and way of life, and disparate treatment (Complaint ¶¶28-61), but also that the Defendants targeted them for "misconduct" after they asked for an accommodation. The Problem Code has always been available to any NYC DOE employee and vendor, as well as anyone in the Unions and who work on contract to a vendor. As long as the discriminatory conduct rises above the level of petty slights and inconveniences, Plaintiffs have an actionable claim under the NYCHRL and can seek redress. The Second Circuit explained that mores of the workplace are developing at a brisk pace, and characterizing conduct as harassing "can only be accomplished in a specific context." (See Gallagher, 139 F.3d at 342). Evaluation of ambiguous acts such as those revealed by the potential evidence in this case presents an issue for the jury." Id. at 347.

In Health Freedom Def. Fund, Inc., v. Carvalho, No. 22-55908, 2024 WL 2873372 (9th Cir. June 7, 2024), the Ninth Circuit reinstated constitutional challenges to the Los Angeles Unified School District's Covid-19 vaccine mandate, overruling the district court's determination that there is a legitimate government interest in mandating a vaccine that cannot stop the spread of disease. The Ninth Circuit concluded that the police powers do not apply to personal medical choices, which the government is not at liberty to infringe without strict scrutiny. Finally, Plaintiffs' allegations that the vaccine does not prevent the spread of COVID-19 must be accepted as true. See ¶38 and ¶39, Complaint). To the extent there is dispute about whether unvaccinated employees are more likely to spread Covid-19, or if so, whether the City was unable to mitigate the risk without undue hardship, Plaintiffs prevail at this stage. Discovery of the facts must be the next step in this matter. At all relevant times, Defendants acted under color of law.

Defendants have stood behind false information, such as the vaccine created a new requirement for employment. This is false. Only the State legislature has the authority to change the terms of employment of Plaintiffs, and this never happened. Terms of employment are under the purview of the Taylor Law. No requirement for educators existed in 2020, 2021, 2022, or now, that mandated vaccination. The Defendants never changed the terms of employment held by them in their contract with the United Federation of Teachers, Plaintiffs' Union, and never changed their contract to mandate vaccination as a term of employment. The Vaccine itself, with the COVID Vaccine Mandate "CVM")  to support it, was just a terrible hoax designed to create a public panic so pervasive that laws could be undermined or cancelled.  This is what happened in New York City to the excellent, senior tenured teachers, the Plaintiffs in this matter.

It is currently well settled that the CVM was not generally applicable nor was it neutral. These arguments and the Scheinman Award issued September 10, 2021 (Complaint, EXHIBIT 4) are stale and have been rejected in this Court. (See Court of Appeals Order EXHIBIT 7, Complaint).

<u>**NOTICE OF CLAIM REQUIREMENTS ARE NOT APPLICABLE TO §1983 SUITS BROUGHT IN FEDERAL COURT and HUMAN RIGHTS LAWS HAVE A  3-YEAR STATUTE OF LIMITATIONS**</u>

Defendants wrote in their Motion that Plaintiffs' claims had to be dismissed because they were time-barred due to Education Law §3813 and a 1-year statute of limitation. Under New York Education Law, Plaintiffs must commence their actions against any school, school district, board of education, or an officer of a school district or .board of education, within one year after the cause of action arose. NY Educ. Law § 3813(2-b). Using the same principles and logic for tolling the three year limitations period in the SHRL and CHRL, the District Courts have held that the one year limitations period in the New York Education Law is similarly tolled when a complaint

has been filed with the EEOC or Defendants are wrong on the Law. Yet Human Rights Laws in New York now have a 3-year statute of Limitations.  On November 17, 2023, Governor Hochul signed State Assembly Bill A00501 into law, extending the statute of limitations for discrimination and retaliation claims brought under the New York State Human Rights Law ("NYSHRL") from one year to three years.

However, some District Courts held that although a filing with the EEOC or NYSDHR tolls the three year limitations period under the human rights laws, it does not toll the one year limitations period under the New York Education Law. See Riccardo v. New York City Dep 't of Ed., 2016 WL 7106048 *6 [Report and Recommendation] (S.D.N.Y. Dec. 2, 2016). Not only is that holding illogical in light of the holdings that an EEOC filing tolls the three year statute of limitations for discrimination claims, but it is based on a clearly flawed interpretation of a New York Court of Appeals case, violates fundamental principles of fairness, especially given the remedial nature of the discrimination laws, and will lead to absurd results. For instance, after a plaintiff files a charge with the EEOC (which is automatically cross-filed with the NYSDHR), if his or her claims under the state and city laws are not tolled by that filing, such plaintiff will have to commence his or her action for violation of the state and city discrimination laws in state court while his or her EEOC charge and cross filed NYSDHR complaint is pending to avoid the expiration of the limitations period. Obviously, it is inefficient and absurd to force a party to file a separate action in a different court for essentially the same claims. Alternatively, if that plaintiff wants to avoid having to file two separate lawsuits to assert his or her claims under federal, state and city laws, and amends his or her state, court complaint to add the federal claim, he or she gives up his or her right to litigate in federal court.

If the one year statute of limitations is not tolled with the filing of an EEOC charge, another dilemma arises pertaining to the election of remedies provision contained in the New York law. In that scenario, when a plaintiff files a charge with the EEOC, which is automatically cross filed with the NYSDHR, and is forced to file his or her action in state court to avoid the expiration of the one year limitations period, such filing may violate the election of remedies doctrine under the NYSHRL. See N.Y. Exec. L. § 297(9); Borum v. Village of Hemstead, 590 F. Supp.2d 376, 382-83 (E.D.N.Y. 2008). Under the New York Human Rights Law, a plaintiff can file his or her complaint with the NYSDHR or the state court, but not both simultaneously. Id. Without a tolling provision for administrative filings with the EEOC or NYSDHR, a plaintiff, when forced to commence a state court action while the EEOC charge is pending, may be forced to violate the election, of remedies provision since the filing with the EEOC is automatically filed with the NYSDHR. See Siddiqi v. New York City Health & Hospitals Corp., 572 F. Supp. 2d 353, 373 (S.D.N.Y. 2008). This may force a plaintiff to choose between federal or state/city claims, and prevent a plaintiff from being able to pursue both federal and state claims.

In addition, the statute of limitations analysis for hostile work environment and NYCHRL claims differ from discrimination claims with discrete adverse actions, such as discharge or demotion. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-18 (2002); Sotomayor v. City of New York, 862 F. Supp. 2d 226, 250-51 (E.D.N.Y. 2012). The Supreme Court held that a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Morgan, 536 U.S. at 117; Sotomayor, 862 F. Supp. 2d at 250. Therefore, "provided that an act contributing to the [hostile work environment and NYCHRL] claim occurs within the filing period, the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability. " Id.; see

Papelino v. Albany College of Pharmacy of Union Univ., 633 F.3d 81, 91 (2d Cir. 2011)("...a plaintiff may bring claims for discriminatory acts that would be barred by the statute of limitations as long as 'an act contributing to that hostile environment [took] place with the statutory period".) Dash v. Board of Ed. Of City School Dist. of N.Y.. 238 F. Supp. 3d 375, 384 (E.D.N.Y. 2017); Sotomayor, 862 F. Supp. 2d at 249-50.

Moreover, discrete acts which would otherwise be untimely to establish a discrimination claim as an adverse action, can be considered under the continuing violations doctrine to assess liability under a hostile work environment claim. Sotomayor, 862 F. Supp. 2d at 251. This Court held:

> To the extent these discrete acts [subjecting plaintiff to an inordinate number of observations and providing negative ratings on the observations] cumulatively create a hostile work environment, the continuing violation doctrine may save these claims under the NYSHRL [and ADEA]. Because some of the allegedly discriminatory conduct occurred after July 26, 2009, all of the discriminatory acts alleged may be considered timely for the purpose of plaintiff s state hostile work environment claim against the DOE.

The New York City Human Rights Law does not make a distinction between discrimination claims for adverse actions and hostile work environment, and has been interpreted to prohibit discrimination which results in a plaintiff being treated less well because of a \ protected characteristic. See Mihalik v. Credit Agricole Cheuvreux N.A. Inc., 715 F.3d 102, 109-10 (2d Cir. 2013); Russo v. N.Y. Presbyterian Hosp.., 972 F. Supp. 2d 429, 449-50 (E.D.N.Y. 2013). . Because of that interpretation and application of the NYCHRL, the courts have applied a broader interpretation of the continuing violation doctrine.

In sum, New York's Notice of Claim requirements were applicable to §1983 suits in state court but not federal court prior to Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302. See, e.g., Brandon v. Board of Education, 635 F.2d 971, 973 n. 2 (2d Cir. 1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981); Courtemanche v. Enlarged City School District, 686 F.Supp. 1025, 1032 (S.D.N.Y. 1988); Burroughs v. Holiday Inn, 621 F.Supp. 351, 353-55 (W.D.N.Y. 1985);

Williams v. Allen, 616 F.Supp. 653, 656-59 (E.D.N.Y. 1985); Paschall v. Mayone, 454 F.Supp. 1289, 1298 (S.D.N.Y. 1978). Felder v. Casey noted that although the Supreme Court itself "ha[d] never passed on the question, the lower federal courts have all, with but one exception, concluded that notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court." 487 U.S. at 140, 108 S.Ct. at 2307. In Brandon v. Board of Education, 635 F.2d at 973 n. 2, a ruling was upheld that compliance with the state's notice-of-claim provision was not a precondition to the district court action. Since the filing of a notice of claim was not a prerequisite to the federal-court suit, a municipality perforce could not require a delay of the commencement of a federal-court suit pending an examination based on such a notice. See Day v Moscow 955 F.2d 807 (2nd Cir 1992). Thus, Plaintiffs' claims are not time barred, and Human Rights Law has, in any case, a 3-year statute of limitations. Defendants' Motion on this point must be dismissed.

Plaintiffs have pleaded facts stating a plausible action that Defendants have violated the Free Exercise Clause, Equal Protection Clause, Establishment Clause, their Constitutional rights to Due Process under the 14th Amendment, and the Takings Clause pursuant to the 5th Amendment. They have successfully pled a Section 1983 deprivation. Under the Free Exercise Clause of the First Amendment, which applies to the states through the Fourteenth Amendment, "[g]overnment enforcement of laws or policies that substantially burden the exercise of sincerely held religious beliefs is subject to strict scrutiny." Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002).".

In this case, for the reasons stated here, Defendants' policies imposed on Plaintiffs burdened the exercise of their sincere religious beliefs. Their claims set forth a prima facie case of discrimination because the allegations viewed in a light most favorable to the Plaintiffs show that

Plaintiffs were terminated because of their sincere religious beliefs. Lowman v. NVI LLC, 821 Fed. Appx. 29, 31 (2d Cir. 2020); see also Offor v. Mercy Med. Ctr., 167 F. Supp. 3d 414, 429 (E.D.N.Y. 2016) (SHRL).

Specifically, Plaintiffs have stated that Defendants' discriminatory imposition of the COVID Vaccine Mandate on employees and, at the same time, placing their fingerprints into the "Problem Code" has permanently scarred their careers, and lives. Defendants have failed to prove that their procedures applying the COVID Vaccine Mandate (CVM) and Plaintiffs' terminations were lawfully executed under prevailing policy and the Constitution.

The Supreme Court case the EEOC v. Abercrombie & Fitch Stores, Inc. 575 U.S. 768 (2015) concluded that "An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions. The First Amendment to the Constitution protects Plaintiff's free exercise of religion and mandates state accommodation for members of religious groups who object to the vaccinations on religious grounds. The Free Exercise Clause recognizes and guarantees Americans the "right to believe and profess whatever religious doctrine [they] desire." Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872, 877 (1990).

"The Defendant never offered any reasonable accommodation to the Plaintiffs that would both satisfy the Plaintiffs' sincere religious beliefs and the Defendants' concern for "a safe environment for in-person learning." The Free Exercise Clause also ascertains that government may not attempt to regulate religious beliefs, compel religious beliefs, or punish religious beliefs. Sherbert v. Verner, 374 U.S. 398, 402 (1963); Torcaso v. Watkins, 367 U.S. 488, 492–93, 495 (1961); and United States v. Ballard, 322 U.S. 78, 86 (1944).

Government may not discriminate against or impose special burdens upon individuals because of their religious beliefs or status. See Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 877; McDaniel v. Paty, 435 U.S. 618, 627 (1978).

The Constitution's protection against government regulation of religious beliefs is absolute; it is not subject to limitation or balancing against the interests of the government. Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 877; Sherbert v. Verner, 374 U.S. 402 (1963). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith herein.". West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943).

The Free Exercise Clause protects beliefs rooted in religion, even if such beliefs are not mandated by a particular religious organization or shared among adherents of a particular religious tradition. Frazee v. Illinois Dept. of Employment Security, 489 U.S. 829, 833–34 (1989). As the Supreme Court has repeatedly counseled, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Church of the Lukumi Babalu Aye v. Hialeah, 508 U.S. 520, 531 (1993) They must merely be "sincerely held." Frazee v. Illinois Dept. of Employment Security, 489 U.S. 834 (1989). Importantly, the protections guaranteed by the Free Exercise Clause also extend to acts undertaken in accordance with such sincerely held beliefs. That conclusion flows from the plain text of the First Amendment, which guarantees the freedom to "exercise" religion, not just the freedom to "believe" in religion. Employment Div. v. Smith, 494 U.S. 877 (1990); Thomas v. Review Board of the Indiana Employment Security Division, 450 U.S. 716 (1990); McDaniel v.

Paty, 435 U.S. 627 (1978; Sherbert v. Verner, 374 U.S. 403–04 (1963); and Wisconsin v. Yoder, 406 U.S. 205, 219–20 (1972).

The Court in Does 1-11 v. Board of Regents of University of Colorado, 100 F.4th 1251 (10th Cir. 2024), stated that:

""a government policy that requires an intrusive inquiry into the validity of religious beliefs violates the Establishment Clause regardless of any purported government interest." 100 F.4th at 1268." A law is not neutral if it singles out particular religious conduct for adverse treatment, treats the same conduct as lawful when undertaken for secular reasons but unlawful when undertaken for religious reasons, applies uncalled for restrictions on religious conduct"; or "accomplishes . . . a 'religious gerrymander,' an impermissible attempt to target [certain individuals] and their religious practices." Id. 538. A law is not generally applicable if "in a selective manner [it] impose[s] burdens only on conduct motivated by religious belief," Id 543., including by "fail[ing] to prohibit nonreligious conduct that endangers [its] interests in a similar or greater degree than . . . does" the prohibited conduct, id., or enables, expressly or de facto, "a system of individualized exemptions," as discussed in Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 884 (1990); see Church, 537. "Neutrality and general applicability are interrelated, . . .[and] failure to satisfy one requirement is a likely indication that the other has not been satisfied." Id, 531.

A law that disqualifies a religious person or organization from a right to compete for a public benefit—including a grant or contract—because of the person's religious character is neither neutral nor generally applicable. See Trinity Lutheran Church of Columbia, Inc. v. Comer, Director, Missouri Department of Natural Resources, 582 U.S. (slip opinion pages 9–11) (2017).

Even when a law is neutral and generally applicable, government may run afoul of the Free Exercise Clause if it interprets or applies the law in a manner that discriminates against religious observance and practice. The Free Exercise Clause, much like the Free Speech Clause, requires equal treatment of religious adherents. Trinity Lutheran Church of Columbia, Inc. v. Comer 582 U.S. (slip opinion. Page 6) (2017); see also Good News Club v. Milford Central Sch., 533 U.S. 98, 114 (2001), and Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 837, 841 (1995)). The Defendants' Motion To Dismiss must be denied.

## **PLAINTIFFS HAVE SUFFICIENTLY PLED FAILURE TO ACCOMMODATE**

In order to adequately allege a failure to accommodate a religious belief claim Plaintiffs must allege that "(1) (s)he has a bona fide religious belief that conflicts with an employment requirement; (2) she informed the employer of her belief; and (3) she was disciplined for failing to comply with the conflicting employment requirement." Marte v. Monetefiore Med. Ctr., No. 22-CV-03491(CM), 2022 U.S. Dist. LEXIS 186884, at *19 (S.D.N.Y. Oct. 12, 2022). All of these have been complied with by each Plaintiff in this matter. Defendants had knowledge of Plaintiffs' sincerely-held religious beliefs yet chose to ignore these beliefs, denied their exemption requests, blocked their Appeals with erratic technological timelines, and declared them guilty of misconduct with a permanent problem code, an adverse employment action. Human Rights Law says that the employer must give a reasonable accommodation even if claiming an undue burden. Before Loudermill, New York State Education Law §3020-a gave tenured public education employees protected job status and Constitutional rights to their employment since tenure rights were established for NYC teachers in 1897. The process involves a formal hearing before an arbitrator or panel where the tenured educator can present evidence, call witnesses, and challenge

the school district's case. The district must have "just cause," and if the teacher is found guilty, a penalty ranging from a reprimand to termination can be imposed. The goal is to protect a teacher from being removed, suspended without pay, or terminated, without Just Cause or probable cause. Tenure remains public policy and a Constitutional and property right in New York State and NYC, and is also a human right not only in state Law, but also in employment contracts statewide. Plaintiffs were never given a hearing on their requests for accommodation. See the case of Kambouris v NYC Dep't of Education, Index No. 518863; Abramovich v. Board of Ed. of Central School Dist. No.1 of Town of Brookhaven and Smithtown 62 A.D.2d 252 [2d Dept. 1978] (holding that the public policy expressed in the tenure statutes is designed to protect individual teachers, as public servants, from being dismissed without a hearing once their competency has been demonstrated); McElroy v. Board of Educ. of Bellmore-Merrick Cent. High School Dist, 5 Misc.3d 321 [Sup Ct. Nassau County, 2004] (acknowledging purpose of statute is to protect tenured teachers from arbitrary discipline); Cardinale v NYC Department of Education, Index No. 85165/2017.

In order for a tenured educator to be taken off of his/her salary, there must be a probable cause hearing where the NYC DOE has the burden of proof. EDL §3020-a "provides the exclusive method of disciplining a tenured teacher in New York State. Tebordo v. Cold Spring Harbor Cent. School Dist., 126 A.D.2d 542, [2d Dept. 1987]. DOE's attempt to characterize its accusations against Plaintiffs here as anything other than misconduct or wrongdoing flies in the face of the facts. And even then, its claim cannot be sustained as a matter of law see Mannix v Bd. of Ed. of City of New York, 21 NY2d 455 [1968] (holding that the employing board improperly terminated tenured teacher accused of not fulfilling a condition of employment by not providing the teacher with due process under EDL §3020-a ); Matter of Glass v. Board of

Education, 21 A.D.2d 891 [1964] (finding tenured teacher entitled to EDL §3020-a hearing where board claimed teacher failed to meet a condition of employment); Lynch v Nyquist, 41 AD2d 363, 365 [3d Dept. 1973] (stating that certification requirements cannot be used as means to erode the protection afforded to tenured teachers and that the regardless of the strength of the board's proof that the teacher was not actually certified it had to proceed pursuant to EDL §3020-a). A tenured teacher cannot be suspended without pay unless he or she has **been convicted** of specified crimes. EDL §3020-a[2][a][b](emphasis added). It follows by analogy, that Plaintiffs cannot be reassigned, taken off salary, or terminated based on speculation and mystery investigations The deprivation of constitutional rights is per se irreparable harm see Ferreyra v. Decker, 456 F.Supp, 549 [S.D.N.Y. 2020], Mitchell v. Cuomo, 748 F.2d 804, 806 [2d Cir. 1984]. The tenure statutes reflect the intent and purpose of the Legislature to protect educators who have successfully completed a probationary period from being disciplined summarily without the safeguards of Education Law § 3020-a. Holt v. Board of Educ. of Webutuck Cent. School Dist., 52 N.Y.2d 625 (1981).

Defendants have not submitted any proof of their specious, deceptive and false claims that Plaintiffs did not establish a prima facie case of religious and medical discrimination. In light of their presumption that they have sufficiently fooled Plaintiffs and this Court, Defendants' have not submitted a single fact or document proving any of their claims of: "undue burden"; "did not meet criteria"; "Katherine Rodi was not served"; and other such arguments in their Motion To Dismiss. See the Summonses, attached, showing proper service of process on Katherine Rodi. Additional information is that 65 Court Street refuses to accept any Summons for Ms. Rodi, and re-directs anyone attemption to serve her at 65 Court Street to the NYC Law Department at 100 Church Street in Manhattan, where the Summons in this case as well as many others were

served. A call was made to the City Law Department about service on Ms. Rodi, and it was confirmed that she, as a high-ranking official of the New York City Department of Education, could be legally served at 100 Church. See **EXHIBITS 38, 38A, 38B.**

Defendants' argument that Plaintiffs failed "to comply with the conflicting employment requirement" is also false. The conflict, if any, was with the unlawful due process designed by the Defendants out of thin air. There was no employment requirement to get vaccinated with the COVID vaccine or be fired. Defendants made that up, and then used it as their standard to dismiss Plaintiffs' case. In this Court, the failure to accommodate has been and continues to be a winning claim. See  Hill v The Department of Education 24-cv-3506-RPK-LB; Mumin v The City of New York et al., 23-cv-03932 (JLR) S.D.N.Y.; Hernandez v. The Richmond County District Attorney, et al., 24-CV-05790 (BMC); Masciarelli v New York City Department of Education, just to state a few out of many. In Di Capua v City of New York (Richmond County Supreme Court, Index No. 85035/2023), ten employees of the NYC DOE won their religious exemption/accommodations, jobs, and backpay. Jennifer LaBarbera also won her job, backpay and religious accommodation/exemption despite her signing a waiver promising she would not challenge her resignation. Index No. 85001/2023.

Defendants have blatantly ignored all the laws demanding a reasonable accommodation for Plaintiff . Defendants never offered any reasonable accommodation to the Plaintiff that would both satisfy the Plaintiff's sincere religious beliefs and the Defendant's concern for "a safe environment for in-person learning." *Ansonia Bd. ofEduc. v. Philbrook,* 479 U.S. 60, 68-69 (1986). It is well-known that the City has "Absent Teacher Reserves" (ATRs) ready and willing to step into a position to fill in for an absent teacher. The Defendants also offer remote teaching in almost all their schools. **EXHIBIT 39.**  Defendants never offered a single document or factual

evidence that showed any effort towards accommodating Plaintiffs, and never gave any rational basis to deny their religious exemption requests.  The Department totally failed in this duty. Defendants already rent spaces throughout New York City for people who are reassigned or are ATRs. The process and substance of the rubber rooms has been created and paid for by the NYC DOE for more than 22 years.

Tenure remains public policy and a Constitutional and property right in New York State and NYC, and is also a human right not only in state Law, but also in employment contracts statewide. Plaintiffs were never given a hearing on their requests for accommodation. See the case of Kambouris v NYC Dep't of Education, Index No. 518863; Abramovich v. Board of Ed. of Central School Dist. No.1 of Town of Brookhaven and Smithtown  62 A.D.2d 252 [2d Dept. 1978] (holding that the public policy expressed in the tenure statutes is designed to protect individual teachers, as public servants, from being dismissed without a hearing once their competency has been demonstrated); McElroy v. Board of Educ. of Bellmore-Merrick Cent. High School Dist,  5 Misc.3d 321 [Sup Ct. Nassau County, 2004] (acknowledging purpose of statute is to protect tenured teachers from arbitrary discipline); Cardinale v NYC Department of Education, Index No. 85165/2017.

In order for a tenured educator to be taken off of his/her salary, there must be a probable cause hearing where the NYC DOE has the burden of proof. EDL §3020-a "provides the exclusive method of disciplining a tenured teacher in New York State.  Tebordo v. Cold Spring Harbor Cent. School Dist., 126 A.D.2d 542, [2d Dept. 1987]. DOE's attempt to characterize its accusations against Plaintiffs here as anything other than misconduct or wrongdoing flies in the face of the facts. And even then, its claim cannot be sustained as a matter of law see Mannix v Bd. of Ed. of City of New York, 21 NY2d 455 [1968] (holding that the employing board

improperly terminated tenured teacher accused of not fulfilling a condition of employment by not providing the teacher with due process under EDL §3020-a ); Matter of Glass v. Board of Education, 21 A.D.2d 891 [1964] (finding tenured teacher entitled to EDL §3020-a hearing where board claimed teacher failed to meet a condition of employment); Lynch v Nyquist, 41 AD2d 363, 365 [3d Dept. 1973] (stating that certification requirements cannot be used as means to erode the protection afforded to tenured teachers and that the regardless of the strength of the board's proof that the teacher was not actually certified it had to proceed pursuant to EDL §3020-a). A tenured teacher cannot be suspended without pay unless he or she has ***been convicted*** of specified crimes. EDL §3020-a[2][a][b](emphasis added). It follows by analogy, that Plaintiffs cannot be reassigned, taken off salary, or terminated based on speculation and mystery investigations The deprivation of constitutional rights is per se irreparable harm see Ferreyra v. Decker, 456 F.Supp, 549 [S.D.N.Y. 2020], Mitchell v. Cuomo, 748 F.2d 804, 806 [2d Cir. 1984]. The tenure statutes reflect the intent and purpose of the Legislature to protect educators who have successfully completed a probationary period from being disciplined summarily without the safeguards of Education Law § 3020-a. Holt v. Board of Educ. of Webutuck Cent. School Dist., 52 N.Y.2d 625 (1981)

The Motion To Dismiss must be denied in full.

## **PLAINTIFF'S FREE EXERCISE CLAIMS ARE VIABLE**

Plaintiffs do not challenge the mandate but the unconstitutional accommodation policies implementing it. Kane v. de Blasio, 19 F.4th 152, 167-170 (2d Cir. 2021). The Second Circuit has held these policies are not neutral or generally applicable, saying that while the mandate may be facially neutral, the accommodation standards were not, meaning that Plaintiffs were likely to succeed as the City could not justify the policies under strict scrutiny. The Second

Circuit reaffirmed this in New Yorkers for Religious Liberty, Inc. v. City of New York, 121 F.4th 448, 453-464 (2d Cir. 2024) ("NYFRL"), reversing dismissal of similar claims for a plaintiff that received no Citywide Panel review. Like that plaintiff, these Plaintiffs were denied under the old, constitutionally defective policy and were never given a remediation through a Citywide Panel review. The accommodation policy also violates the Establishment and Equal Protection Clauses through facial denominational preferences and documented hostility to non-preferred beliefs.

<b><u>CONCLUSION</u></b>

Plaintiffs more than meet the minimal pleading requirements for their statutory discrimination claims. The Second Circuit already confirmed the accommodation policies were facially discriminatory (Kane, 19 F.4th at 164-169), giving Plaintiffs direct evidence of discrimination that should entitle them to a denial of the Motion To Dismiss. Plaintiffs also adequately pleaded failure to accommodate under all applicable statutes. Undue hardship "as a matter of law" is not warranted in this case. The mandate allowed accommodations and Defendants accommodated over 100 employees under their discriminatory policy, including to teachers similarly situated to Plaintiffs. Finally, retaliation and harassment claims are well-pleaded, including through allegations that Plaintiffs were branded with "problem codes" damaging their reputations and employment prospects long after the mandate's rescission.

Article 78 and Res Judicata Don't Apply**.** Plaintiffs weren't required to file Article 78 proceedings. Many claims and requested relief couldn't be brought through special proceedings, and "it is the petitioner's choice whether to bring an Article 78 proceeding – with the attendant deferential review of agency action, and limited menu of relief – or a plenary action." *Whitfield v. City of New York,* 96 F.4th 504, 528-29 (2d Cir. 2024). Plaintiffs' claims are timely. Plaintiffs'

demands for relief include recovery of monetary damages in backpay from the date of being removed from salary to the present; full reinstatement to Plaintiffs' prior titles and positions with all raises and benefits; their names and personal data removed from the Office of Personnel Investigations' ("OPI") Problem Code database; and/or they will each be given a §3020-a Arbitration Hearing to defend and support their keeping their jobs without getting vaccinated with accommodations for their requests for religious accommodations.

Dated: October 28, 2025

Respectfully submitted,

/s/Annabelle Matyas  /s/Daisy Badillo  /s/Dahlia Mendoza
Annabelle Matyas  Daisy Badillo  Dahlia Mendoza