

# Exhibit 35

_____

In the Matter of

**UNITED FEDERATION OF TEACHERS, LOCAL 2,
AFT, AFL-CIO,**

Charging Party,

-and-                                                                    **CASE NO. U-32479**

**BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK,**

Respondent.

_____

**ROBERT T. REILLY, GENERAL COUNSEL (ARIANA A. DONNELLAN of
counsel), for Charging Party**

**KAREN SOLIMANDO, EXECUTIVE DIRECTOR OF LABOR RELATIONS
(ALLISON S. BILLER of counsel), for Respondent**

**BOARD DECISION AND ORDER**

This case comes to us on exceptions filed by the Board of Education of the City

School District of the City of New York (District) to a decision of an Administrative Law

Judge (ALJ), granting an improper practice charge alleging that the District violated

§ 209-a.1 (d) of the Public Employees' Fair Employment Act (Act).[1]  The charge alleged

that the District violated the Act when it unilaterally began placing a "flag" in its computer

system next to the names of unit employees represented by the United Federation of

Teachers, Local 2, AFT, AFL-CIO (UFT), who have been the subject of discipline,

allegedly causing those employees to be denied opportunities for transfers and

permanent assignments.  Originally, the ALJ dismissed the charge, finding that the

flagging process was a duplicate, digitized version of certain documents in employees'

_____

[1] 54 PERB ¶ 4522 (2021).

personnel files and that the manner in which the District maintains employees'

personnel files was not a mandatory subject of negotiations.[2]  On exceptions to that

decision, the Board remanded the matter to the ALJ for further development of the

record.[3]  On remand, the ALJ found that the "flagging" impacted terms and conditions of

employment, and that the District had violated the Act by instituting the flagging system.

On April 7, 2022, oral argument was held before the Board.

EXCEPTIONS

The District has filed nine exceptions to the ALJ's decision.  In its first two

exceptions, the District asserts that the ALJ incorrectly found a violation of § 209-a.1 (d)

of the Act on the basis that the evidence did not support her conclusion that employees

are unable to inquire through the UFT "what specific documents are linked to a flag."  To

the contrary, the District contends, the testimonial evidence was that the UFT could

obtain this information through the District and could check its accuracy by inspecting

the complete paper personnel file.[4]

The District's third and fourth exceptions reject the ALJ's finding that neither an

employee nor her UFT representative has access to the Galaxy system and neither is

able to personally view the flagged documents and whether they actually reflect the

contents of the documents in the personnel file.  Rather, the District maintains that the

ability to view the documents as maintained in the personnel file allows the UFT and its

members to verify the flagged documents.  Additionally, the District asserts that the UFT

---

[2] 51 PERB ¶ 4561 (2018).
[3] 52 PERB ¶ 3009 (2019).
[4] Exceptions 1-2.

did not request such documents be produced, as such documents are redundant of the personnel file, and thus "there is no reason why the [District] would not provide this information."[5]

In exceptions five and six, the District argues that the ALJ erred in finding that "the record is clear that flagging affects principals' decisions whether to select a teacher in his or her school." To the contrary, the District maintains that "the record shows that the purpose of the flagg[ing] procedure is to give principals the opportunity to consider or reconsider their decision after they have viewed the flagged documents."[6] The District further claims that no evidence was introduced that any teacher failed to obtain a transfer on the basis that they had been "flagged" in the Galaxy system.

The District further alleges that there is no contractual right to a transfer, and that "flagged" employees have the same right to apply for a transfer as those who have not been flagged, and that there is no basis to require the digitization of the entire personnel files. Additionally, the District contends that principals have multiple ways of learning about disciplinary histories, and, further, just as principals are not required to view the paper files, so too "they are not required to view the flagged documents" before making their hiring decision.[7]

The District further excepts to the ALJ's finding that "when viewing flagged documents, principals are viewing only negative information contained in an employees personnel file, without any information that might counterbalance the negative

---

[5] Exceptions 3-4.
[6] Exception 5.
[7] Exception 6, quoting 54 PERB ¶ 4522, at 4652-4653.

information such as years of positive observation reports or other positive material that may affect a principal's decision."[8] Finally, the District excepts to the ALJ's finding that "the record shows that, in certain cases, letters annexed to a flag will be inaccurate if an employee is found, in arbitration, to have not engaged in the conduct set forth in a file letter, or to have engaged in a less severe misconduct."[9]

The UFT supports the ALJ's decision and contends that no basis has been demonstrated for reversal.

For the reasons given below, we affirm the ALJ's decision.

<u>FACTS</u>

The facts in this matter are fully set out in the ALJ's thorough decision and are only addressed here as necessary to decide the exceptions. On March 15, 2012, the District announced plans to initiate a new method of "flagging" negative work history in an online disciplinary support system that is linked to and accessible through its "Galaxy" computer system, an online budgetary system that provides a table of organization for all District offices and schools.

The flagging procedure makes information regarding an employees' disciplinary history with the District available to school principals when an employee is applying for a new position. The information is only available to principals if they indicate in Galaxy that they intend to hire an individual for a position in their school.[10] This process is

---

[8] Exception 7, quoting 54 PERB ¶ 4522, at 4653.
[9] Exception 8, quoting 54 PERB ¶ 4522, at 4653.
[10] Although the parties refer to the "hiring" of individuals, most of the individuals in question are already District employees, who are simply applying to transfer to a position at a different school or are seeking a permanent assignment. Some applicants may also be former District employees, who are seeking to return to the District.

referred to as "intending" an employee in Galaxy.  If an employee's name has been flagged, a "flag symbol" will appear next to the employee's name when a principal "intends" the individual's name in Galaxy.[11]  The appearance of the "flag symbol" indicates that there is information that is available to the principal by clicking on the flag. One or more digitized documents may be linked to a flag and can be viewed by the "intending" principal.  However, the District has represented that the decision whether or not to click on the flag symbol and see the attached documents remains for the principal; the District "considers the *optional* review of the disciplinary support unit flag by hiring Principal/supervisor as an opportunity to learn about an employee's prior history-similar to checking reference[s] before making a hiring decision."[12]

When an "intending" principal moves to proceed, a dialogue box appears, headed "Notification of Prior Disciplinary Action."  This dialogue box does not provide any hyperlink to pdf documents.  It states that the prospective hire/transfer "has been disciplined (on occasion(s) due to a prior report(s) of allegations of misconduct that have been substantiated.")  The box instructs that for the intending principal to obtain more information she should "contact your Senior Field Counsel or CFN HR Director."[13]

The dialogue box then states: "If you wish to proceed with the action to intend to bring this individual onto your budget please click below to acknowledge that you are aware of and acknowledge the prior disciplinary action concerning this individual."[14]

---

[11] District Brief at 6, citing Jt Ex 1.  As the "flag symbol" is not reproduced in the cited Exhibit, and the system is not available to the UFT, we adopt the District's characterization for purposes of this decision.
[12] *Id* (citing Tr, at 83-84 (Rodi) emphasis in original).
[13] Jt Ex 1.
[14] *Id.*

"Intending" principals are given the option in the Galaxy system of proceeding with the hire or of cancelling the hire.[15] In the event that the principal continues with "intending" the individual to the job, he or she is required to acknowledge awareness of the prior disciplinary action concerning the individual.[16]

At the bottom of the dialogue box, two buttons allow the "intending" principal to either "Apply" (thereby submitting a final decision either to proceed with or to cancel the hire) or to "Cancel" (thereby allowing the "intending" to pursue further information, either through the flag symbol and its attached documents, or the resources specified in the dialogue box).[17]

Katherine Rodi, Director of the District's Office of Employee Relations, oversees the Disciplinary Support Unit (DSU), which manages the District's online disciplinary support system. The DSU tracks employee discipline and is responsible for flagging employee names when appropriate. The DSU began flagging employee names in approximately May of 2012.

Rodi testified that the DSU will place a flag next to an employee's name in the Galaxy system only when two criteria are met. First, a substantiated report of discipline or misconduct must have been issued by one of the District's three investigatory bodies: the Office of the Special Commissioner of Investigation, the Office of Special Investigations, or the Office of Equal Opportunity.[18] Second, the DSU must have

---

[15] *Id.*
[16] *Id.*
[17] Jt Ex 1.
[18] Tr, at 73, 76.

evidence that the employee received a copy of the relevant disciplinary document.[19] That evidence normally consists of the employee's signature on the letter to be flagged, or on a mail receipt.[20]  If those criteria have been met, the DSU will manually flag the employee's name in the Galaxy system and will link a copy of the disciplinary document in question to the flag.

Rodi explained the several steps that must occur before a document is issued that can lead to the flagging of the employee's name in Galaxy.  Initially, one of the three investigatory bodies mentioned above must have conducted an investigation that resulted in a report substantiating an allegation of wrongdoing against the employee. Next, the principal must meet with the employee to discuss the report.  If the principal issues a disciplinary letter as a result of the meeting, that letter may serve as a basis for a flag.  As set forth above, the DSU must also have evidence that the employee received a copy of that letter.[21]  Rodi testified that only documents that are in an employee's personnel file can serve as a basis for flagging an employee's name.  If an employee files a rebuttal to the letter of discipline, the rebuttal letter is also linked to the flag in Galaxy.[22]  Disciplinary letters issued by principals due to misconduct that have not been substantiated by an investigatory body, such as a letter admonishing an employee for lateness, may not serve as a basis for flagging an employee's name and cannot be annexed to a flag.[23]

---

[19] Tr, at 73.
[20] Tr, at 81.
[21] Tr, at 90.
[22] Tr, at 81.
[23] Tr, at 108.

Other documents that can be linked to a flag are those resulting from a disciplinary proceeding held pursuant to § 3020-a of the New York State Education Law (EL), but only if the employee was brought up on charges based on misconduct that is set forth in a disciplinary letter that meets the criteria for imposing a flag. An award or settlement issued as part of such a proceeding can be attached to a flag, but only if the award or settlement includes a finding or admission of culpability relating to the initial disciplinary letter.[24]

A flag remains next to an employee's name as long as the underlying disciplinary letter remains in the employee's file.[25] Rodi testified that the DSU will remove a flag or a document linked to a flag if an award issued in a EL § 3020-a disciplinary proceeding dismisses the charges against an employee based on a finding that the alleged misconduct did not occur, and if the award directs the District to remove the underlying disciplinary letter from the employee's personnel file.[26] If an award finds that the misconduct occurred, but is insufficient for dismissal, the flag will remain next to the employee's name, because the underlying letter finding misconduct remains in the employee's personnel file. The DSU will also remove a flag if a settlement requires it to remove the disciplinary letter on which the flag was based. Similarly, the DSU will remove a flag if an employee successfully pursues a grievance challenging a letter on which a flag is based, and the grievance decision directs the District to remove that

---

[24] Tr, at 90-91. The EL § 3020-a disciplinary charges are not linked to a flag. Tr, at 109.
[25] Tr, at 113.
[26] Tr, at 95, 98.

letter from the employee's personnel file.[27]

According to the District, all documents linked to a flag are already included in employees' personnel files. Although the UFT is unable to view the flags and the documents linked to them, it does not dispute that the linked documents are intended to be limited to the discipline related documents in each individual's personnel files. Those paper files are maintained at the school where an employee is currently employed, or was last employed. Because the District has not digitized the entire contents of employee personnel files, principals cannot view them online. To view a copy of an employee's personnel file, a principal considering whether to hire an employee must contact the school where the employee's file is kept, and request that a copy be made and sent to him or her. A principal should see, in an employee's personnel file, any document that has been flagged in Galaxy.

Rodi testified that the flag serves a purely informational function in assuring that a hiring principal is aware of flagged information. She further testified that flagging an employee's name does not restrict an employee's ability to apply for a new position or impose any restriction or limitation on the employee. Rodi testified that principals are not required to take, or refrain from taking, any action when an employee's name has been flagged; they may, if they so choose, hire an employee whose name is flagged.[28] Rodi testified that she personally knows principals who have hired employees whose

---

[27] Tr, at 113. The collective bargaining agreement between the parties includes a grievance procedure that allows employees to seek the removal of disciplinary letters from their personnel files.
[28] Tr, at 87-88.

names are flagged in Galaxy.[29]

Other than those working in the DSU, only an employee's current principal and the principal who intends to hire the individual can view whether an employee's name is flagged in Galaxy.[30]  However, before their names are flagged, employees have received a copy of the letter of misconduct that is linked to the flag and have been advised that the document has been placed in their personnel file.

Amy Arundell, the UFT's Director of Personnel, testified that she first learned of the flagging system in October 2012 when Mathew Polisheck, a unit member, called her and told her that a principal rescinded his offer of a position and told him that he could not hire him because there was a flag on his file in Galaxy.[31]  After Polisheck contacted her, Arundell received complaints from other employees who stated that they had interviewed for a position and were later told that they could not be hired, or that the principal had reconsidered his or her decision, because a flag was placed on their file in Galaxy.[32]  In Polisheck's case, Arundell learned that the principal decided not to hire him after learning of the existence of a substantiated case of discipline against Polisheck and a EL § 3020-a disciplinary proceeding.[33]

Prior to the implementation of the flag symbols, principals could only view online an employee's service history, which shows whether an employee was rated effective or ineffective in his or her yearly evaluation, and whether an employee was suspended.[34]

---

[29] Tr, at 123.
[30] Tr, at 83.
[31] Tr, at 154-155.
[32] Tr, at 161.
[33] Tr, at 180.
[34] Tr, at 89, 126.

To view an employee's disciplinary history, an "intending" principal would have to request the employee's personnel file from the employee's school.[35]

DISCUSSION

A public employer violates its duty to negotiate in good faith, in violation of § 209-a.1 (d) of the Act, when it unilaterally implements a change to a mandatorily negotiable term or condition of employment.[36] We have long held that procedures for transfer and transfers themselves "are a mandatory subject of negotiations."[37]

On remand, the ALJ reassessed her prior finding that Rodi's testimony demonstrated that "[e]mployees may inquire through the UFT whether their name has been flagged in Galaxy *and what documents are linked to a flag.*"[38] As the ALJ correctly noted, we held that, although Rodi's testimony supports the first part of her finding, it does not support the latter part of that finding, and hence we remanded this issue for a full review of the record.[39]

On her review of the record, the ALJ concluded that the record does not support a finding that employees may inquire through the UFT to learn what specific documents

---

[35] Tr, at 78.

[36] *See, eg, Town of Islip v NYS Pub Empl Relations Bd*, 23 NY3d 482, 484, 47 PERB ¶ 7006 (2014); *Patchogue-Medford Union Free Sch Dist*, 30 PERB ¶ 3041, 3094 (1997); *Monticello Cent Sch Dist*, 22 PERB ¶ 3002, 3008 (1989), *enforced* 22 PERB ¶ 7022 (Sup Ct, Albany County 1989).

[37] *City of Buffalo*, 9 PERB ¶ 3024, 3040 (1976); *see also White Plains PBA*, 9 PERB ¶ 3007, 3009 (1976) ("Assignment of 'both permanent jobs and work details on the basis of preference and seniority is a term and condition of employment and thus a mandatory subject of negotiations.'"), quoting *City of Albany [Albany Firefighters]*, 7 PERB ¶ 3142, 3147 (1974).

[38] 52 PERB ¶ 3009, at 3043 (emphasis added by the ALJ).

[39] 51 PERB ¶ 4561, at 4764.

are linked to a flag."[40]

From there, the ALJ moved to consideration of the impact of this finding on the

claims before her. The ALJ's findings of fact and law here are instructive:

> The record is clear that flagging affects principals' decision whether to select a teacher for a position in his or her school. Principals see flags, and the documents linked to a flag, when they are in the process of selecting a teacher for a position in their school. At that point, the decision to select a teacher is not final. In fact, the purpose of the flagged procedure is to give principals the opportunity to consider, or reconsider, their decision once they have viewed the flagged documents.
>
> Although the flagged documents are included in an employee's official school file, the record shows that principals are not required to, and often do not, request a copy of a teacher's entire official file before finally deciding whether to select an employee for a position in their school. That is apparent from the fact that the record shows that only *if* a principal makes that request does the principal receive a copy. It is also apparent from the fact that the flagging system was created for that reason; that is, principals had placed employees in their school without being aware of the employees' negative disciplinary history involving serious matters.
>
> Further, when viewing flagged documents, principals are viewing only negative information contained in an employee's file, without any information that might counter-balance the negative information, such as years of positive observation reports or other positive material, that may affect a principal's decision whether or not to select an employee for a position. The record also shows that, in certain cases, letters annexed to a flag will be inaccurate if an employee is found, in arbitration, to have not engaged in the conduct set forth in a file letter, or to have engaged in a less severe misconduct.[41]

---

[40] 54 PERB ¶ 4522, at 4652. As neither the District nor the UFT submitted additional evidence, the ALJ relied on the evidence at the hearing before her; in her review, she based her determination on the limited information Arundell received from Rodi, that is, whether specific individuals had been flagged, and not the documents attached to the flags. *Id*.

[41] 54 PERB ¶ 4522, at 4563.

As the ALJ found, Rodi testified that flagged letters are only removed from Galaxy if the arbitration award specifically directs that the letter be removed from a teacher's official file. Therefore, a principal may view a flagged letter when the conduct underlying that letter has been held in arbitration to either not have occurred or to have occurred in a different manner or degree than that which is set forth in the flagged letter, if the arbitration award does not specifically direct removal of the letter.

The ALJ's factual determinations, particularly her credibility determinations, "are generally entitled to great weight unless there is objective evidence in the record compelling a conclusion that the credibility finding is manifestly incorrect."[42] No such objective evidence has been raised before us. The ALJ reasonably exercised her discretion in taking a closer look at the specific testimony of both Arundell and of Rodi on remand. Moreover, both parties had the opportunity to submit further evidence on the factual issues. Neither availed themselves of the opportunity, and they are now bound by the evidence they chose to submit.

We affirm the ALJ's finding that the District made a change to the procedures to be used to fill a position, a mandatory subject of negotiations. Prior to the implementation of the "flagging" system, an "intending" principal who wished to see an employee's disciplinary history would request the employee's full personnel file from the employee's school. The personnel file would include not only the employee's negative

---

[42] *Pine Valley Cent Sch Dist*, 51 PERB ¶ 3036, 3160 (2018), quoting *Village of Scarsdale*, 50 PERB ¶ 3007, n 51 (2017), *confd sub nom Village of Scarsdale v NYS Pub Empl Relations Bd*, 55 PERB ¶ 7008 (2d Dept 2022). *See also Pleasantville Union Free Sch Dist*, 51 PERB ¶ 3024, 3100 (2018); *Village of Endicott*, 47 PERB ¶ 3017, 3051 (2014).

disciplinary history, but also any positive history, such as positive performance evaluations, commendations from managers, and awards, that might counterbalance the disciplinary history.  Under the new "flagging" system, however, such positive history is no longer available to "intending" principals, who receive only negative information on employees they intend to hire.

Moreover, prior to the change at issue here, whether to look at the personnel file at all was left to an "intending" principal's discretion.  Now, the negative portion of an employees' personnel file is fed automatically to "intending" principals regardless of whether they express a desire to see the employee's personnel file or not.  As the District concedes, this data is meant to be taken into consideration by the "intending" principals as they make their hiring decisions.

These changes, both the automatic nature of providing the information and providing solely the negative portions of the employee's personnel file, represent changes to the prior procedure as to effectuating transfers within the District.  These changes have an adverse effect on employees' terms and conditions of employment as the "intending" principle receives a purely negative, decontextualized version of the personnel file, unlike in the past, where "intending" principals, if they saw the personnel file at all, would see the full personnel file, including both positive and negative history. Consistent with our prior precedent, we find these unilateral changes to the procedure used to fill positions affect terms and conditions of employment, and are a mandatory

subject of bargaining.[43]  For that reason, we affirm the ALJ's finding that the District violated the Act.

We do not find the adoption of flagging to be in and of itself a disciplinary action. The record is clear that teachers who have been flagged remain eligible to apply for transfers just as do their colleagues who have not been.  Rather, we grant relief because of the unilateral change of procedures impacting terms and conditions of employment—here, by procedurally incentivizing principals to peruse and assess prior discipline, or, at a minimum, requiring them to acknowledge the existence of such discipline.  For these reasons, we find that the unilateral adoption of this new procedure without negotiation with the UFT violates § 209-a.1 (d) of the Act.

The charge also states that "[i]n addition, none of the affected employees would have an opportunity to review the information upon which the 'flag symbol' was entered or to ascertain or contest whether the disciplinary action the entry is based on actually occurred or is in error."[44]  Later in the charge, the UFT asserts that the District "failed to bargain in good faith over a mandatory subject of bargaining—employee discipline, *transfer* and other personnel actions—and therefore committed an improper practice

---

[43] *See Niagara Falls Police Captains and Lieutenants Assn*, 33 PERB ¶ 3058, 3161 (2000) ("We have held . . . that the procedures to be used to fill a position . . . are a mandatory subject of negotiation."), citing *Schenectady Patrolmen's Benevolent Assn*, 21 PERB ¶ 3022 (1988); *Dutchess County BOCES Faculty Assn, NEA/NY*, 17 PERB ¶ 3120 (1984), *confd sub nom Matter of Dutchess County Bd of Coop Educ Serv,* 122 AD2d 845, 19 PERB ¶ 7018 (2d Dept 1986); *White Plains Police Benevolent Assn*, 9 PERB ¶ 3007 (1976).  *See also Dutchess Community College and County of Dutchess*, 46 PERB ¶ 3009, 3016 (2013).  *See generally City of Watertown v State of NY Pub Empl Relations Bd*, 95 NY2d 73, 33 PERB ¶ 7007 (2000) ("bargaining is mandatory if the procedures qualify as a "term and condition" of employment").
[44] Charge, ¶ 6.

under the Act."[45]  Among the relief sought, the charge requested an order "compelling

the Board to negotiate in good faith with the UFT regarding the implementation,

procedures for and impact of the employee 'flag symbols.'"[46]

We note that we have long held that "the right of an employee to review his

personnel file bears a direct and significant relationship to working conditions, including

possible demotion, promotion, and discipline, rendering the demand mandatorily

negotiable."[47]  Here, the District has culled out the disciplinary history portion of the

personnel file, and made only that portion easily and immediately available for principals

to consult in determining whether or not to finalize the decision to grant an employee's

request to transfer, or an application to a promotional position.  Indeed, by requiring the

"intending" principal to acknowledge that she is aware that the employee has a

disciplinary history, the District has created an incentive for the "intending" principal to

consult the digitized materials.

The convenience of accessing the digital excerpt from the personnel file, rather

than taking the steps to obtain the full paper file, mean that the excerpted digital

materials are more likely than not to be used in place of the full file in making decisions

as to transfers, promotions and other lateral hiring or recall decisions.  However, as the

UFT has alleged, and the District has admitted, neither the UFT nor the individual

---

[45] Charge, ¶ 9 (emphasis added).
[46] Charge, ¶ 12.
[47] *City of Schenectady*, 21 PERB ¶ 3022, 3049 (1988); *Town of Carmel,* 29 PERB ¶ 3053, 3121-3122, n 3 (1996) ("notice of entries in personnel files" a mandatory subject). *See  generally Niagara Falls Police Club (Drinks-Bruder)*, 52 PERB ¶ 3007, 3029 (2019) (union satisfied its statutory obligation by successfully resolving a previously filed unit-wide grievance in the matter so that everyone, including the charging party, had the opportunity to review their personnel files).

employee has the ability to access the "flag symbol" and the materials attached thereto, to ascertain if they are in fact materials that have been properly placed, and properly remain, in the personnel file.

The reasons that underlay our finding in *City of Schenectady* that access to paper personnel files is a mandatory subject apply with full force and vigor to these digitized disciplinary history excerpts, which are every bit as likely, if not more so, to affect working conditions, including transfer, promotion and other opportunities. We therefore find that the District violated § 209-a.1 (d) of the Act by unilaterally instituting the flagging system without having negotiated with the UFT as to notification to employees that they have been "flagged" and access to the materials attached to the "flag symbol" sufficient to permit verification that such materials were placed in the employees' personnel files and properly remain within them.

These same factors lead us to conclude that the flagging system is not, as the District argued, a mere optional "opportunity to learn about an employee's prior history-similar to checking reference[s] before making a hiring decision." Moreover, the District concedes that this data is meant to be taken into consideration by the "intending" principals as they make their hiring decisions.

Taken as a whole, then, the flag, the dialogue boxes encouraging the intending principals to either review the flagged documents, seek information through Senior Field Counsel or the CFN HR Director, and the requirement, prior to finalizing or canceling the transaction, that the "intending" principal acknowledge the existence of the disciplinary history, effectively amount to the addition of a new procedure with respect to

such transfers.

Additionally, the flagging process may reasonably be found to establish a new criterion for such appointments, that is, the consideration of the applicant's disciplinary history. As we have long held, a "criterion for appointment or promotion is a managerial prerogative beyond the scope of mandatory negotiation, if applicable only to prospective employees or to future promotion of current employees."[48] The same considerations and the same result applies to criteria for transfers.[49] Accordingly, we find that the UFT did not establish a violation of § 209-a.1 (d) of the Act by requiring principals to consider the disciplinary history of applicants for transfer or promotional positions.

However, we affirm the ALJ's finding that the "flagging" process is a mandatory subject of negotiations to the extent that the process affects terms and conditions of employment by denying employees notice that they have been "flagged" and an opportunity to view the materials attached to the "flag symbol" and to contest its appropriateness for inclusion as part of the personnel file. To the extent that the District has imposed a new criteria for transfer and promotional applications, the consideration of the applicant's disciplinary history, we find that no violation of the Act has been established. We note that our decision is made without prejudice to the right to bargain upon demand the impact of this decision.

---

[48] *Rensselaer City Sch Dist*, 13 PERB ¶ 3051, 3084-3085 (1980). *See also City of Niagara Falls*, 33 PERB ¶ 3058, 3161-3162 (2000); *City of Buffalo*, 29 PERB ¶ 3023, 3053 (1996) (qualifications non-mandatory); *Addison Cent Sch Dist*, 13 PERB ¶ 3060, (1980) (criteria for promotion non-mandatory); *see generally Levitt v Bd of Collective Bargaining of the City of NY*, 79 NY2d 120, 128, 29 PERB ¶ 7516 (1992).
[49] *City of Schenectady*, 21 PERB ¶ 3022, at 3050-3051.

IT IS, THEREFORE, ORDERED that the District will forthwith:

1.     Negotiate in good faith with the UFT procedures by which unit employees who have been the subject of discipline are notified that they have been "flagged" in its "Galaxy" computer system, are able to verify the accuracy and propriety of inclusion of supporting documentation attached to the flag symbol, and seek removal of such materials as are not properly part of the personnel file; and

2.     Sign and post the attached notice at all physical and electronic locations customarily used by it to post notices to unit employees.

DATED:  June 13, 2022
        Albany, New York

_____
John F. Wirenius, Chair

_____
Anthony Zumbolo, Member

_____
Rosemary A. Townley, Member

# NOTICE TO ALL EMPLOYEES

**PURSUANT TO**
**THE DECISION AND ORDER OF THE**

**NEW YORK STATE**
**PUBLIC EMPLOYMENT RELATIONS BOARD**

**and in order to effectuate the policies of the**

**NEW YORK STATE**
**PUBLIC EMPLOYEES' FAIR EMPLOYMENT ACT**

**we hereby notify all employees of the Board of Education of the City School District of the City of New York (District) in the unit represented by the United Federation of Teachers, Local 2, AFT, AFL-CIO (UFT), that the District will forthwith:**

1. Negotiate in good faith with the UFT procedures by which unit employees who have been the subject of discipline are notified that they have been "flagged" in its "Galaxy" computer system, are able to verify the accuracy and propriety of inclusion of supporting documentation attached to the flag symbol, and seek removal of such materials as are not properly part of the personnel file.

**Dated . . . . . . . . .**      **By  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**

on behalf of the **BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK**

*This Notice must remain posted for 30 consecutive days from the date of posting, and must not be altered, defaced, or covered by any other material.*



DIRECT/RODI

Your next witness, please.

MS. BILLER: I would like to call Ms. Rodi, please.

JUDGE BLASSMAN: Please approach and I will swear you in.

Do you swear or affirm to tell the truth and nothing but the truth in this proceeding?

THE WITNESS: I do.

JUDGE BLASSMAN: Thank you.

Can you please state your full name for the record.

THE WITNESS: My full name is Katherine Rodi, R-O-D-I.

DIRECT EXAMINATION

BY MS. BILLER:

Q. By whom are you employed by?

A. I'm employed by the New York City Department of Education.

Q. What capacity?

A. I'm the director of the office of Employee Relations.

Q. How long have you held that position?

DIRECT/RODI

A.          I held that position for two and a half years.

Q.          And prior to being the director of Employee Relations, what other job titles have you held within the Department of Education?

A.          I was an agency attorney, I was a senior counsel and I was the director of the Disciplinary Support Unit.

Q.          As director of Employee Relations, what are some of your job duties and responsibilities?

A.          I oversee several units.  I oversee the Office of Personnel Investigation, I oversee the Office of Employee Relations, I oversee the Office of Safety and Health, I oversee it, it is not really an office, but the Disciplinary Support Unit work.

Q.          Can you explain to us what the Disciplinary Support Unit is?

A.          It is a unit within my office that manages the on-line system that is the Disciplinary Support System.

DIRECT/RODI

And what we do, we check and track and eventually flag folks. We check older discipline, older substantiated reports, we review them, we track them and then if all the qualifications that we build together are met, then we may flag a person.

Q. Can you give us the years that you were responsible for overseeing the disciplinary support unit?

A. I was hired in June of 2012. I started in July, early July of 2012. Then I was promoted to the director of Employee Relations in January of 2013 and then I subsumed DSU into my current work.

JUDGE BLASSMAN: DSU?

THE WITNESS: The disciplinary support unit.

JUDGE BLASSMAN: So, since when have you been overseeing disciplinary support.

A. It has basically been under my portfolio since July of 2012.

Q. Are you aware when the flagging was implemented, began to be implemented?

DIRECT/RODI

A. I was invited to a meeting about disciplinary support projects, I want to say it was like April of 2012 at that meeting there were all the senior counsel, I was in the role of senior counsel at the time. So, all the senior counsel, there where I think there were superintendents, other random DOE staff and we got a presentation about the DSU.

By the time I started in July at least a couple of hundred people had been flagged. So, I think it started in May or June of 2012.

Q. Are you familiar with the Galaxy system?

A. Yes.

Q. What is the Galaxy system?

A. The Galaxy system is actually a budgetary system that provides table of organization for all DOE offices and schools.

So, it is a budget driven system that basically tracks all current employees by the order by where they work.

DIRECT/RODI

Q.        What, if any, involvement do you have with the Galaxy system?

A.        As being part of Human Resources, I use the Galaxy system a lot.  To check people's status and then the DSU, the Disciplinary Support project, it linked to Galaxy, but it is not like a part of Galaxy.

JUDGE BLASSMAN:  It is linked to Galaxy?

THE WITNESS:  It is linked to Galaxy.

Q.        Are you familiar with the Disciplinary Support Unit flag?

A.        Yes, I am.

Q.        I know we heard much talk about it.

Can you briefly define for us what the disciplinary support unit flag is?

A.        Sure.  The flag is a reflection of what we pulled into the DSU system.  The system is a web based system.

It is set up so that no one can be accidentally or easily flagged.  It is set up so that if I want to kind of open a folder

DIRECT/RODI

for a person, I have to put in their name or an identifier such as a Social Security number, an employee I.D. and then that person's name would be automatically populated from the Galaxy data.

Once I have the person's information up I can then attach documents to the person's name.

Just attaching a document to a person's name doesn't flag them. What it has to do it has to meet two qualifications.

Number one, there has to be a substantiated report of discipline issued from an investigatory body.

Then second there has to be a letter of discipline that has been -- that has evidenced that the person received the discipline.

Once both those two factors are met a person is then manually flagged.

So, even if the two documents were both there, unless someone went in there and looked at it, a person couldn't be flagged. It is not, the system doesn't read



**Exhibit 37**

SCANNED ON 7/16/2010

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: __ALICE SCHLESINGER__          PART IA PART 16
                    *Justice*

Philomena Brennan

-v-

NYC Dept of Education

INDEX NO. 112977/09

MOTION DATE _____

MOTION SEQ. NO. __001__

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... _____

Answering Affidavits — Exhibits _____ _____

Replying Affidavits _____ _____

Cross-Motion:  ☒ Yes  ☐ No

Upon the foregoing papers, it is ordered that this ~~motion~~ Article 78 proceeding and respondent's cross-motion to dismiss are determined in accordance with the accompanying memorandum decision.

UNFILED JUDGMENT
This Judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).

JUL 13 2010

Dated: __July 13, 2010__

ALICE SCHLESINGER J.S.C.

Check one:  ☒ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST    ☐ REFERENCE

☐ SUBMIT ORDER/JUDG.    ☐ SETTLE ORDER /JUDG.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
In the Matter of the Application of

PHILOMENA BRENNAN,

                                    Petitioner,                    Index No. 112977/09
                                                                  Motion Seq. No. 001
For An Order and Judgment Pursuant to Article 78 of
the Civil Practice Law and Rules,

                    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                    Respondent.
-----------------------------------------------------------------------X
**SCHLESINGER, J.:**

Petitioner Philomena Brennan, a tenured teacher, commenced this Article 78

proceeding against the New York City Department of Education (DOE) seeking to have her

name removed from the DOE's Ineligible/Inquiry List, as the basis for the listing was a

criminal complaint against her that was long ago dismissed. In addition, Ms. Brennan seeks

to compel the DOE to allow her to withdraw the resignation she submitted when the

criminal charges were first filed. The DOE has moved to dismiss, contending that

petitioner's challenge to the listing is time-barred. With respect to the resignation issue, the

DOE has sought dismissal for failure to state a cause of action, alleging that no

administrative decision exists on that issue for this Court to review and that Ms. Brennan

must pursue contractual remedies under her collective bargaining agreement before

coming to court.

The background facts are set forth in this Court's May 12, 2010 interim decision and

will be briefly reviewed here.

At the time in question, the spring of 2006, Ms. Brennan was working as a full-time teacher at Frederick Douglas Academy in Brooklyn. Toward the end of the school year, the principal Tamika Matheson advised Ms. Brennan that she was giving her an unsatisfactory rating, the first she had ever received. Following their discussion, Ms. Brennan formally resigned from her teaching position, but she thereafter did some substitute teaching.

Some years later, having decided to take steps to withdraw her resignation, Ms. Brennan returned to the school on January 30, 2009 to speak with the principal. According to Ms. Brennan, she saw the principal and was escorted to her office and told to wait. About ten minutes later she was arrested, handcuffed and charged with the misdemeanor of trespass and the violation of harassment. In accordance with the rules, Ms. Brennan promptly reported the arrest to the DOE.

Due to the arrest, Ms. Brennan was placed on the DOE's Ineligible/Inquiry List, making her ineligible for rehire or for a teaching assignment. Six months later, on June 10, 2009, all criminal charges were dismissed against Ms. Brennan. Within a day or so, Ms. Brennan formally requested that the DOE remove her name from the Ineligible/Inquiry List based on proof of that dismissal, but despite some follow-up meetings, she received no response to her request. She commenced this proceeding in September 2009; as of May 12, 2010 when oral argument was held, Ms. Brennan had still not received a decision on her request to be removed from the List. Nor had she been able to withdraw her resignation.

Following oral argument, this Court issued an interim decision dated May 12 denying the DOE's motion to dismiss the proceeding as time-barred. The Court further directed the

DOE to promptly determine Ms. Brennan's request to have her name removed from the Ineligible/Inquiry list and to appear again on July 7, 2010 for further argument.

On July 7, counsel for the DOE appeared with a copy of an undated letter addressed to Ms. Brennan and signed by Santiago Taveras, IA Deputy Chancellor Teaching and Learning (as designee for Joel I. Klein, Chancellor). The letter is brief, consisting of only two sentences. In it, Deputy Chancellor Taveras indicates that he has carefully considered the matter and "determined to sustain the recommendation regarding removal of [Ms. Brennan's] name from the Invalid/Inquiry List."

While the letter does not include an effective date, it can only logically be construed as having an effective date of June 11, 2009, the date when Ms. Brennan applied to have her name removed from the Ineligible/Inquiry List based on the dismissal of the criminal charges. As no legal basis existed for keeping Ms. Brennan's name on the List after that point, the DOE should have acted promptly to remove the name so Ms. Brennan could be considered for rehire as a substitute teacher.

Somewhat more complex is Ms. Brennan's request for relief based on her failed attempts to withdraw her resignation as a full-time teacher. Ms. Brennan was not eligible to withdraw her resignation until her name was removed from the Ineligible/Inquiry List. Now that that has been accomplished, she may apply to withdraw her resignation by following the set DOE procedures, whatever they may be. As respondent correctly argues, no DOE decision exists determining that issue for this Court to review in this proceeding. Therefore, that part of petitioner's request for relief is premature, and the DOE's cross-motion to dismiss that claim for failure to state a cause of action is granted. As no other issues are extant, no further submissions or appearances by either party are necessary.

3

Accordingly, it is hereby

ORDERED that respondent's cross-motion to dismiss this proceeding as time-barred is denied in accordance with this Court's May 12, 2010 interim decision; and it is further

ADJUDGED that the petition is granted insofar as it requests the removal of the name of Philomena Brennan from the Ineligible/Inquiry List maintained by respondent New York City Department of Education, effective June 11, 2009; and it is further

ORDERED that respondent's cross-motion to dismiss petitioner's claim regarding the withdrawal of her resignation as a teacher is granted, and that claim is dismissed without prejudice and without costs or disbursements to either party.

This constitutes the final decision, order and judgment of this Court.

Dated: July 13, 2010

**JUL 13 2010**

_____
J.S.C.
**ALICE SCHLESINGER**

**UNFILED JUDGMENT**
This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).

4



# Exhibit 38

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

Annabelle Matyas; Daisy Badillo; Dahlia Mendoza

)
)
)
)
)
)
)

*Plaintiff(s)*

v.

The Department of Education of the City of New York; Melissa Aviles-Ramos- Chancellor; Katherine Rodi- Director of Employee Relations

)
)
)
)
)
)
)
)

Civil Action No.    1:25-cv-01861-MMH

*Defendant(s)*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    The Department of Education
of the City of New York
65 Court Street
Brooklyn, NY 11201

Melissa Aviles- Ramos- Chancellor
65 Court Street
Brooklyn, NY 11201

Katherine Rodi- Director of Employee Relations
100 Gold Street
New York, NY 10038

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Pro se:

Annabelle Matyas
7632 170th Street
Fresh Meadows, NY 11366

Daisy Badillo
13 Darin RD
Warwick, NY 10990

Dahlia Mendoza
5005 164th Street
Fresh Meadows, NY 11365

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
CLERK OF COURT

Date: 04/04/2025 _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.   1:25-cv-01861-MMH

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* THE DEPARTMENT OF EDUCATION OF THE

was received by me on *(date)* 5-6-25 . CITY OF NEW YORK, MELISSA AVILES-RAMOS, CHANCELLOR AND KATHERINE RODI, DIRECTOR OF EMPLOYEE RELATIONS

☒ I personally served the summons on the individual at *(place)*

100 CHURCH STREET, NEW NY    on *(date)* 5-6-25    ; or
, (NEW YORK

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☒ I served the summons on *(name of individual)* A, BOEBLER    , who is

designated by law to accept service of process on behalf of *(name of organization)*

NYC LAW DEPARTMENT on *(date)* 5-6-25 ; or

☐ I returned the summons unexecuted because    ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: 5-6-25

Nancy Barrantes
*Server's signature*

NANCY BARRANTES
*Printed name and title*

7 DENISE DRIVE 7H
LATHAM, NY 12210
*Server's address*

KEVIN CLINTON
NOTARY PUBLIC
NO. 01CL0031206
My Comm. Expires
Nov 20, 2028
Qualified in Kings County
STATE OF NEW YORK

Additional information regarding attempted service, etc:

State of New York
County of New York
The foregoing instrument was acknowledged
before me 6 day of May 2025
Kevin Clinton
Your Name Here. Notary Public
My Commission Expires 11-20-28



**Exhibit 38a**

UNITED STATES DISTRICT COURT
STATE OF NEW YORK, EASTERN DISTRICT
Client: Pro-Se
Address:

| | |
|---|---|
| CORRINE LYNCH | **Index Number**: 1:24-CV-07795-DG-JAM |
| *Plaintiff* | **Client's File No.**: lynch vs the dept. of ed |
| **VS** | **Court Date**: |
| THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, ET AL | |
| *Defendant* | **Date Filed**: |

JEREMY COLEY, affirms and says:

# AFFIRMATION OF SERVICE

Deponent is not a party herein; is over the age of 18 years and resides in the State of New York.

On **12/19/2024**, at **2:41 PM** at: **100 CHURCH STREET, NEW YORK, NY 10007** Deponent served the within **Summons in a Civil Action, COMPLAINT, EXHIBITS**

On: **KATHERINE RODI - DIRECTOR OF EMPLOYEE RELATIONS**, Defendant therein named.

☒ **#1 SUITABLE AGE PERSON**
By delivering thereat a true copy of each to A.GOEBLER  (Co-Worker) a person of suitable age and discretion. Said premises is recipient's:[X] actual place of business / employment  [] dwelling house (usual place of abode) within the state.

☒ **#2 DESCRIPTION**

| | | | |
|---|---|---|---|
| **Sex**: Male | **Color of skin**: White | **Color of hair**: Brown | **Glasses**: |
| **Age**: 32 | **Height**: 5ft 9in - 6ft 0in | **Weight**: 161-200 Lbs. | **Other Features**: |

☒ **#3 MILITARY SERVICE**
I asked the person spoken to whether defendant was in active military service of the United States or the State of New York in any capacity whatever and received a negative reply. The source of my information and the grounds of my belief are the conversations and observations above narrated.

☐ **#4 WITNESS FEES**
Subpoena Fee Tendered in the amount of

☐ **#5 OTHER**

☒ **#6 MAILING**
On 12/20/2024 deponent enclosed a copy of same in a postpaid envelope properly addressed to KATHERINE RODI - DIRECTOR OF EMPLOYEE RELATIONS at 100 CHURCH STREET, NEW YORK, NY 10007  [] Actual Place of Residence [X] Actual Place of Business,  and deposited the envelope in an official depository, personally or via agency, under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "personal and confidential" and did not indicate on the outside, thereof by return address or otherwise that the communication was from an attorney or concerned an action against the defendant.

I affirm on 12/20/2024 under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

JEREMY COLEY
DCA License # 2112646

REC'D IN PRO SE OFFICE
DEC 27 '24 AM 9:39

*PREFERRED PROCESS SERVERS INC 166-06 24TH RD, LL, WHITESTONE, NY 11357 718-362-4890 LIC#2003142-DCA*

UNITED STATES DISTRICT COURT
STATE OF NEW YORK, EASTERN DISTRICT
Client: Pro-Se
Address:

| | |
|---|---|
| CORRINE LYNCH | **Index Number**: 1:24-CV-07795-DG-JAM |
| *vs*       *Plaintiff* | **Client's File No.:** lynch vs the dept. of ed |
| THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, ET AL | **Court Date:** |
| *Defendant* | **Date Filed:** |

**JEREMY COLEY**, affirms and says:

# AFFIRMATION OF SERVICE

Deponent is not a party herein; is over the age of 18 years and resides in the State of New York.

On **12/19/2024**, at **2:41 PM** at: **100 CHURCH STREET, NEW YORK, NY 10007** Deponent served the within **Summons in a Civil Action, COMPLAINT, EXHIBITS**

On: **DAVID BANKS - CHANCELLOR**, Defendant therein named.

REC'D IN PRO SE OFFICE
DEC 27 '24 AM9:38

☒ **#1 SUITABLE AGE PERSON**
By delivering thereat a true copy of each to A.GOEBLER (Co-Worker) a person of suitable age and discretion. Said premises is recipient's:[X] actual place of business / employment [] dwelling house (usual place of abode) within the state.

☒ **#2 DESCRIPTION**

| | | | |
|---|---|---|---|
| Sex: Male | Color of skin: White | Color of hair: Brown | Glasses: |
| Age: 32 | Height: 5ft 9in - 6ft 0in | Weight: 161-200 Lbs. | Other Features: |

☒ **#3 MILITARY SERVICE**
I asked the person spoken to whether defendant was in active military service of the United States or the State of New York in any capacity whatever and received a negative reply. The source of my information and the grounds of my belief are the conversations and observations above narrated.

☐ **#4 WITNESS FEES**
Subpoena Fee Tendered in the amount of

☐ **#5 OTHER**

☒ **#6 MAILING**
On 12/20/2024 deponent enclosed a copy of same in a postpaid envelope properly addressed to DAVID BANKS - CHANCELLOR at 100 CHURCH STREET, NEW YORK, NY 10007 [] Actual Place of Residence [X] Actual Place of Business, and deposited the envelope in an official depository, personally or via agency, under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "personal and confidential" and did not indicate on the outside, thereof by return address or otherwise that the communication was from an attorney or concerned an action against the defendant.

I affirm on 12/20/2024 under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

JEREMY COLEY
DCA License # 2112646



UNITED STATES DISTRICT COURT
STATE OF NEW YORK, EASTERN DISTRICT

Client: Pro-Se
Address:

| | |
|---|---|
| CORRINE LYNCH | **Index Number:** 1:24-CV-07795-DG-JAM |
| | **Client's File No.:** lynch vs the dept. of ed |
| vs | **Court Date:** |
| THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, ET AL | |
| *Plaintiff* | |
| *Defendant* | **Date Filed:** |

JEREMY COLEY, affirms and says:

# AFFIRMATION OF SERVICE

Deponent is not a party herein; is over the age of 18 years and resides in the State of New York.

On **12/19/2024**, at **2:41 PM** at: **100 CHURCH STREET, NEW YORK, NY 10007** Deponent served the within **Summons in a Civil Action, COMPLAINT, EXHIBITS**

On: **THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK,** Defendant therein named.

☒ **#1 Corporation or Partnership or Trust or LLC or Non-Profit**
By delivering thereat a true copy of each to **A.GOEBLER** personally. Deponent knew said corporation/partnership/trust/LLC/Non-Profit so served to be the corporation/partnership/trust/LLC/Non-Profit described in said aforementioned document as said Defendant and knew said individual to be Clerk authorized to accept service thereof.

☒ **#2 DESCRIPTION**

| | | | |
|---|---|---|---|
| Sex: Male | Color of skin: White | Color of hair: Brown | Glasses: |
| Age: 32 | Height: 5ft 9in - 6ft 0in | Weight: 161-200 Lbs. | Other Features: |

☐ **#3 WITNESS FEES**
Subpoena Fee Tendered in the amount of

☐ **#4 OTHER**

I affirm on 12/20/2024 under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

_____
JEREMY COLEY
DCA License # 2112646

*PREFERRED PROCESS SERVERS INC 166-06 24TH RD, LL, WHITESTONE, NY 11357 718-362-4890 LIC#2003142-DCA*



**Exhibit 38b**

UNITED STATES DISTRICT COURT/EASTERN DISTRICT OF NEW YORK      Attorney: 111 - 97

JADENAE TRABACCHI

Plaintiff(s)

-against-

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, ETAL

Defendant(s)

Index #: 24-CV-6123-TAM

Date Filed:

**AFFIRMATION OF SERVICE**

**ORIGINAL**

SIEH CLARK AFFIRMS AND SAYS AFFIRMANT IS NOT A PARTY TO THIS ACTION AND OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on September 24, 2024 at 01:26 PM at

C/O NEW YORK CITY LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

Affirmant served the within true copy/copies of the SUMMONS IN A CIVIL ACTION AND COMPLAINT on KATHERINE RODI, DIRECTOR OF EMPLOYER BENEFITS, the defendant/respondent therein named,

**SUITABLE AGE**      by delivering thereat a true copy/copies of each to ARITON MARKE, LEGAL CLERK a person of suitable age and discretion. Said premises is the defendant's/respondent's actual place of business within the state. He identified himself as being AUTHORIZED to accept for the defendant/respondent.

Affirmant further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|-----|-----------|-----------|---------------|------------------|-----------------|
| MALE | WHITE | BROWN | 46 | 5'8 | 170 |

GLASSES

**MAILING**      Affirmant enclosed a true copy of same in a postpaid wrapper properly addressed to the defendant/respondent at the defendant's/respondent's actual place of business at

C/O NEW YORK CITY LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

and deposited said wrapper in a post office or official depository under exclusive care and custody of the United States Postal Service within New York State on September 24, 2024 by REGULAR FIRST CLASS MAIL in an envelope marked PERSONAL & CONFIDENTIAL and not indicating on the outside envelope thereof, by return address or otherwise that the communication is from an attorney or concerns an action against the person to be served.

REC'D IN PRO SE OFFICE
SEP 26 '24 PM 1:24

Pursuant to New York Civil Practice Law Rules 2106 - I affirm on 24 day of September, 2024 , under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Gotham Process Inc.
Lic. 1251720-DCA
299 Broadway
New York NY 10007

**SIEH CLARK**
License #: 2066971-DCA
Docket #:       *1308205*

RECD IN PRO SE OFFICE

ORIGINAL

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of New York

| | |
|---|---|
| Jadenae Trabacchi | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 24-cv-6123-TAM |
| The Department of Education of The City of New York, David Banks Chancellor and Katherine Rodi Director of Employer Benefits | ) ) ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* The Department of Education of The City of New York, 65 Court Street, Brooklyn, NY 11201

David Banks, Chancellor, 65 Court Street, Brooklyn, NY 11201

Katherine Rodi, Director of Employer Benefits, 100 Gold Street, New York, NY 10038

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Jadenae Trabacchi, 8420 20th Avenue, Apt C1, Brooklyn, NY 11214

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: 08/30/2024

*Dmb*

*Signature of Clerk or Deputy Clerk*



# Exhibit 39

# TEACHER VACANCY CIRCULAR NO 4 CENTRAL REMOTE TEACHERS iZONE 2022 2023

NYC Department of Education
3.93.9 out of 5 stars
Remote
Full-time

## Location

Remote

## Full job description

## TEACHER VACANCY CIRCULAR NO 4 CENTRAL REMOTE TEACHERS iZONE 2022 2023

Posted Date: May 6, 2022 Deadline: Jun 3, 2022
New York United States
VIRTUAL

## Job Details

**(SUBJECT TO BUDGET AVAILABILITY)**

**POSITION:**

## Teacher - Central

Remote Instruction Teachers

**License/Eligibility Requirements:**

New York City licensed Social Studies, Science, English, Foreign Language, Math and Health tenured teachers in High School Grade Levels.

**Office:**

iZone

**Location:**

82-01 Rockaway Blvd, Ozone Park, NY 11416

Or other DOE offices

**Remote Teachers**

**Position Summary:**

Virtual Learning Classrooms aim to partner teachers from around the city with students to provide them with increased access to courses not available in their home schools, including, but not limited to Electives, AP Courses, and Foreign Language courses. This posting is for teachers interested in teaching in this full time program from September 2022 - June 2023. Remote instruction teachers will deliver instruction to and communicate with high school students in other locations using internet and required technological platforms. Please note that while students will not be in the same location as the teacher, this is an in person teaching position.

Remote Teachers are licensed teachers of high school grade levels who teach students virtually. Remote teachers will teach students in the following subject areas: Advanced Placement Subjects (Including but not limited to, AP Psychology, AP Spanish, AP US History, AP World History, AP Government, AP Calculus AB/BC, AP Macroeconomics, AP Statistics, AP Computer Science Principles and A, AP Environmental Science, AP English Language and Literature, and AP Seminar), electives (Including but not limited to, Forensics, Health, Media Literacy, Financial Literacy, science electives, Computer Science and Business) and Foreign Languages (Including but not limited to, Spanish, Chinese and French). Other subjects may be added. Students may be enrolled from multiple schools simultaneously, but total class size will not exceed contractual limits. Remote Teachers will be expected to participate in 10 sessions of professional learning workshops including an online course leading to a Learning Management System certification to occur during July and/or August prior to commencement of position with remaining

on-going professional learning during the year and will be paid at the per session rate for work beyond the contractual workday/work year. Remote teachers will perform required duties (including corresponding with home school staff, planning for remote instruction and assessment, communication and conferencing with students and/or parents). Duties and responsibilities are intended to emulate traditional teaching paradigms and create an equitable learning experience.

**Reports to:**

DIIT iZone Supervisor

**QUALIFICATIONS:**

- Minimum of four (4) years of teaching experience as a regularly appointed teacher. Knowledge of the common core standards as it relates to course.

- Extensive knowledge of the New York State and City Standards, meets Advanced Placement requirements (as appropriate) and is licensed in subject matter.

- Demonstrated expertise in an online learning environment designing and implementing standards-based instruction that specifies clear learning objectives, includes engaging activities and authentic assessments to measure mastery.

- Willingness to promote online dialogue to deepen the learning experience.

- Demonstrated ability with written and oral communications emphasis placed on the delivery of digital presentations.

- Demonstrated ability to use online learning, communication and other edtech tools as appropriate.

- Can differentiate instruction for individuals or groups of students based on instructional data and analysis as well as student characteristics.

- Can sustain and document flexible teaching schedules, which account for asynchronous and synchronous activities that are student-centered and maintain high standards for student engagement and success.

- Selected candidates will be asked to facilitate a demonstration lesson or planning activity to demonstrate aforementioned qualifications.

**PREFERRED SKILLS:**

- Demonstrated skill in team building, group dynamics, and facilitating collaborative learning.
- Proven history of being a self-starter who works well without constant supervision.

**DUTIES AND RESPONSIBILITIES:**

- Demonstrate competency in using data from assessments and other data sources to modify content and guide student learning.

- Modify engaging content and appropriate assessments in an online environment.

- Provide quality instruction to students using asynchronous and synchronous teaching methods (I.e. asynchronous = discussion forums, group work, written and digital assignments, posted content. Synchronous = online classrooms, webinars, chat rooms).

- Employ student-centered instructional strategies that are connected to real-world applications to engage students in learning.

- Facilitate and monitor online instruction groups/discussions to promote learning through higher-order thinking and group interaction.

- Provide a variety of ongoing and frequent teacher-student, teacher-teacher, and teacher-administrator interaction with participating schools.

- Provide prompt feedback, communicate high expectations, and teach to diverse talents and learning styles.

- Online communication between students and teachers is a significant component of this program to mimic in person communication. Therefore, teachers are expected to respond to student emails and grade assignments within 2 workdays, as well as monitor and respond to discussion postings daily during the school week.

- Regularly share with home school(s) student data including but not limited to grades and attendance. This includes the use of school selected platforms and systems.

- Incorporate and comply with FERPA, AUP and communicate privacy guidelines to students.

- Select and use a variety of online tools for communication, productivity, collaboration, data and performance analysis, presentation, research, and online content delivery as appropriate to the content area and student needs.

- Use communication technologies in a variety of mediums and contexts for teaching and learning.

- Apply technical troubleshooting skills (downloading plug-ins, uploading assignments, etc.)

- Participate in all professional development and peer mentoring exercises throughout the duration of service.

- Develop key relationships in order to work closely with home school staff, students and parents of participating schools, guidance counselors and central iZone staff.

- Participate in activities to identify best practices, address challenges and assess efficacy.

**WORKING CONDITIONS & LOCATION:**

- The maximum class size of a full virtual course not exceed UFT contractual limits.

- Teachers shall not be assigned more than twenty five (25) teaching periods per week and may teach up to five (5) remote classes; however, the maximum number of distinct courses shall not exceed three (3).

- Teachers must confer with students synchronously during programmed periods each week, as well as be available for asynchronous teaching approaches including but not limited to office hours, individual and small group conferencing and providing direction for independent student

work. Facilitate learning through supplied curriculum that teachers may supplement.

- Teachers are expected to teach in person from 82-01 Rockaway Blvd, Ozone Park, NY 11416 or other DOE office.

**Hours:**

As per Article Six of the Collective Bargaining Agreement

**Salary:**

As per UFT Contract

**Work Year:**

As per Article Six of the Collective Bargaining Agreement

**APPLICATION INSTRUCTIONS:**

Please be sure application includes cover letter, resume and your 6-digit file number.

Please send application via email to the following email address: iLearnNYC@schools.nyc.gov with the Subject line: "Fulltime Remote Teacher application."

Applications will be accepted through:

# JUNE 3, 2022

# An Equal Opportunity Employer M/F/D

It is the policy of the Department of Education of the City of New York to provide equal employment opportunities without regard to actual or perceived race, color, religion, creed, ethnicity, national origin, alienage, citizenship status, age, marital status, partnership status, disability, sexual orientation, gender(sex), military status, unemployment status, caregiver status, consumer credit history, prior record of arrest or conviction(except as permitted by law), predisposing genetic characteristics, or status as a victim of domestic violence, sexual offenses and stalking, and to maintain an environment free of harassment on any of the above - noted grounds, including sexual

harassment or retaliation. For more information, please refer to the DOE Non - Discrimination Policy.

