UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
ANNABELLE MATYAS; DAISY BADILLO; and
DAHLIA MENDOZA,

                     Plaintiffs,

               -against-

THE DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK; MELISSA AVILES-RAMOS,
Chancellor; and KATHERINE RODI, Director of
Employee Relations,

                   Defendants.
--------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-01861 (OEM) (MMH)

ORELIA E. MERCHANT, United States District Judge:

On April 4, 2025, Plaintiffs Annabelle Matyas ("Matyas"), Daisy Badillo ("Badillo"), and Dahlia Mendoza ("Mendoza") ("Plaintiffs") commenced this action against Defendants the Department of Education of the City of New York ("NYC DOE"), Melissa Aviles-Ramos, Chancellor ("Ramos") and Katherine Rodi, Director of Employee Relations ("Rodi") ("Defendants"). *See generally* Complaint, Dkt. 1 ("Complaint" or "Compl."). Plaintiffs allege that Defendants "engaged in widespread religious discrimination in implementing [their] vaccine mandates by discarding due process rights outright and adopting a facially discriminatory religious accommodation policy that conditioned an exemption on membership in a favored religion." *Id.* ¶ 27.

Before the Court is Defendants' fully briefed motion to dismiss the Complaint.[1] For the following reasons, Defendants' Motion is granted.

---

[1] Memorandum of Law in Support of the Defendants' Motion to Dismiss the Complaint, Dkt. 12-1 ("Motion" or "Mot."); Plaintiffs' Opposition to Defendants' Motion to Dismiss, Dkt. 19 ("Opposition" or "Opp'n"); Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint, Dkt. 16 ("Reply").

### A. Parties

Plaintiffs are former NYC DOE teachers. *See* Compl. ¶¶ 17-19. Matyas began working for NYC DOE in 2001 as a biology teacher and obtained tenure in 2005. *Id.* ¶¶ 17, 69-70. Mendoza "was a tenured teacher hired in 1991 to work for the [NYC DOE]." *Id.* ¶ 18. Badillo "was a tenured Bilingual Special Education teacher hired in November 1996 to work for [NYC DOE]." *Id.* ¶ 19.

Each Plaintiff alleges they "had an impeccable reputation and record." *Id.* ¶¶ 17-19. Each Plaintiff filed a "request[] for religious exemption and a § 3020-a hearing" related to the COVID-19 vaccination and that, at the time of their request, they were public employees of Defendants "as defined by New York State Civil Service Law § 75-b(1)(b) and a covered person under Citywide Administrative Services and Education Law §§ 3020 and 3020-a." *Id.*

NYC DOE oversees the New York City public school system throughout the five boroughs of New York City. *Id.* ¶ 20. Ramos is the Chancellor of the NYC DOE and oversees and manages the New York City public school system. *Id.* ¶ 21. Rodi is the Director of Employee Relations for NYC DOE and is responsible for "overseeing the [NYC DOE's] Office of Safety and Health, and the Office of Personnel Investigations where she decides who among the [NYC DOE's] employees are placed on a 'Problem Code'" and "monitors the disciplinary information in the personnel file that is highlighted by the Problem Code for principals who may want to hire a former or current employee." *Id.* ¶ 22. Plaintiffs allege that Ramos and Rodi "possess sufficient authority to affect personnel decisions." *Id.* ¶ 23.

---

[2] The following facts are taken from Plaintiffs' Complaint and accepted as true for the purposes of Defendants' Motion. The Court recites only those facts relevant to resolving the pending Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Vaccine Mandate and Arbitration Agreement

In August 2021, the Commissioner of the New York City Department of Health and Mental Hygiene issued an order requiring all NYC DOE employees to show proof of at least one dose of vaccination against COVID-19 by October 1, 2021 ("Vaccine Mandate"). Mot. at 2; *see also Jean v. Dep't of Educ. of N.Y.C.*, 24-CV-2264, 2025 WL 2782533, at *1 (E.D.N.Y. Sep. 30, 2025) (arising out of the same underlying facts); *Ruscelli v. Dep't of Educ. of City of New York*, 23-CV-7475 (AMD) (MMH), 2026 WL 381642, at *1 (E.D.N.Y. Jan. 7, 2026) (same).[3] After that order was issued, NYC DOE employees and the City of New York ("City") met to negotiate the impact of that order on NYC DOE employees. Mot. at 2. On September 10, 2021, after negotiations reached an impasse, arbitrator Martin F. Scheinman ("Sheinman") issued a decision that set forth exceptions and procedures for claiming exceptions to the Vaccine Mandate. Mot. at 3. Specifically, the decision (1) established a process for handling exemption and accommodation requests; (2) provided that all unvaccinated employees who had not requested an accommodation, or had made a request that was denied, would be placed on leave without pay ("LWOP") on September 28, 2021; (3) offered enhanced separation and extended leave options for employees who had been placed on LWOP; and (4) stated that beginning December 1, 2021, DOE would seek to terminate employees who were on LWOP and had not chosen either the enhanced separation or leave options set forth in the decision. Compl. at 83-102 ("Arbitration Agreement"); *see also* Mot. at 3. After the Arbitration Agreement, there was a procedure established to hear appeals from religious exemption request denials under a citywide panel ("Citywide Panel"). *See* Compl. ¶ 13; *id.* at 143[4] (email sent from NYC DOE to Matyas informing her of the Citywide Panel procedure).

---

[3] "[T]he [c]ourt may take judicial notice of facts regarding COVID-19." *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 127 n.1 (E.D.N.Y. 2022).

[4] Citations to page numbers in the Complaint refer to the automatically generated ECF pagination.

**C. Plaintiffs' Religious Exemption Requests and Subsequent Terminations**

On September 20, 2021, pursuant to the procedures set forth in the Arbitration Agreement, Matyas requested a religious exemption from the Vaccine Mandate "in support of her life-long sincere religious beliefs." *Id.* ¶ 72; *id.*, Exhibit 10 at 118-27, Dkt. 1 ("Exhibit 10"). The next day, her exemption request was denied "because she 'did not meet the criteria.'" Compl. ¶ 73; *see also id.*, Exhibit 11 at 128-41, Dkt. 1 ("Exhibit 11"). On December 3, 2021, she filed an appeal to the Citywide Panel, which was denied on March 28, 2022. Compl. ¶ 74; *id.*, Exhibit 12 at 142-52, Dkt. 1 ("Exhibit 12"); Mot. at 4. On April 11, 2022, Matyas received a letter from Defendants informing her that she was terminated. Compl. ¶ 75. In June 2023, Matyas requested her job back, but Defendants denied her tenure "without any justification." *Id.* ¶ 76.

On September 20, 2021, Mendoza requested a religious exemption from the Vaccine Mandate "describing her sincere religious belief against the vaccine." *Id.* ¶ 81; *id.*, Exhibit 14 at 155-58, Dkt. 1 ("Exhibit 14"). On September 22, 2021, her "religious appeal . . . was acknowledged but denied." Compl. ¶ 82; *id.*, Exhibit 15 at 159-61, Dkt. 1 ("Exhibit 15"). On September 23, 2021, Mendoza's appeal was forwarded to Scheinman Arbitration and Mediation Services, Inc. ("SAMS"), and on October 5, 2021, her appeal was heard in front of an arbitrator. Compl. ¶ 83. Then, on November 30, 2021, Mendoza's request was received by the Citywide Panel. *Id.* ¶ 87. On March 28, 2022, her appeal was denied "because of 'undue burden.'" *Id.*; *id.*, Exhibit 20 at 172-76, Dkt. 1 ("Exhibit 20"); *see* Mot. at 4. On April 1, 2022, Mendoza "requested a 3020-a hearing" but never received a response. Compl. ¶ 88; *id.*, Exhibit 21 at 177-78, Dkt. 1 ("Exhibit 21"). On April 11, 2022, Mendoza "received an email telling her she was terminated, saying that she had not been vaccinated, which was a condition of employment." Compl. ¶ 89; *id.*, Exhibit 22, at 179-80 ("Exhibit 22"). On February 14, 2023, after the Vaccine Mandate ended,

"[Mendoza] went on her [p]ayroll portal and saw that she was on the Problem Code 'PR' [and] was blocked from ever working for the Defendants." Compl. ¶ 92; *id.*, Exhibit 26 at 191-92, Dkt. 1 ("Exhibit 26").

On September 17, 2021, Badillo requested a religious exemption to the Vaccine Mandate due to her "sincere religious belief against taking the COVID vaccination." Compl. ¶ 96; *id.*, Exhibit 26 at 189-90, Dkt. 1 ("Exhibit 25"). On September 19, 2021, her request was denied. Compl. ¶ 97; *id.*, Exhibit 27 at 193-94, Dkt. 1 ("Exhibit 27"). On September 19, 2021, she appealed her request to SAMS, and it was thereafter denied. *Id.* ¶¶ 98-99; *id.*, Exhibit 28 at 195-96, Dkt. 1 ("Exhibit 28"). Badillo appealed her request to the Citywide Panel, which was denied on February 15, 2022. Compl. ¶ 100; *id.*, Exhibit 30 at 199-200, Dkt. 1 ("Exhibit 30"). On February 18, 2022, "[Badillo] was sent a form to fill out from the UFT to request a 3020-a [but] no one at [NYC DOE] responded." Compl. ¶ 101; *id.*, Exhibit 31 at 201-02, Dkt. 1 ("Exhibit 31"). On March 17, 2022, Badillo was terminated. *Id.* ¶ 102. She retired on July 3, 2022, but Defendants "would not recognize her retirement, only her termination with a problem code." *Id.*; *id.*, Exhibit 32 at 203-04, Dkt. 1 ("Exhibit 32"). On February 14, 2023, Badillo encountered a problem code on her personnel file and in May 2022, she received information that NYC DOE "had placed a Problem Code on her personnel file without [her] consent." Compl. ¶ 103.

## LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(5)

Pursuant to Federal Rule of Civil Procedure 12(b)(5) ("Rule 12(b)(5)"), a defendant may move to dismiss a complaint for "insufficient service of process." FED. R. CIV. P. 12(b)(5). Although *pro se* litigants are afforded some latitude, they must comply with procedural rules. *See Yadav v. Brookhaven Nat'l Lab'y*, 487 F. App'x 671, 672 (2d Cir. 2012).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). In considering the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

In reviewing a *pro se* complaint, the Court is mindful that a plaintiff's pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*," the Court "remain[s] obligated to construe a *pro se* complaint liberally." (citations omitted)).

## DISCUSSION

Plaintiffs assert five causes of action:[5] (1) religious discrimination, Compl. ¶¶ 104-11; (2) deprivation of employment without just compensation in violation of the Fifth Amendment, *id.* ¶¶ 112-23; (3) violation of equal protection, *id.* ¶¶ 124-34; (4) failure to reasonably accommodate sincerely held religious beliefs, *id.* ¶¶ 135-42; and (5) "fraud in the inducement to deny Plaintiffs their property and liberty rights to a constitutionally protected due process hearing," *id.* ¶¶ 143-60. Construing their claims liberally, Plaintiffs assert federal claims under § 1983[6] for religious discrimination and retaliation based on religion in violation of the First Amendment's Free Exercise and Establishment Clauses, as well as the Fourteenth Amendment's Equal Protection and Due Process Clauses, and a claim for violation of the Fourteenth Amendment Takings Clauses.[7] Additionally, Plaintiffs assert state-law and city-law claims for fraudulent inducement, religious discrimination, and retaliation based on religion in violation of the New York Education Law

---

[5] Plaintiffs assert that all of their causes of action arise under 42 U.S.C. § 1983; 42 U.S.C. § 1988 ("Section 1988"); 18 U.S.C. § 242 ("Section 242"); the First Amendment of the United States Constitution ("First Amendment"); the Fifth Amendment of the United States Constitution ("Fifth Amendment"); the Fourteenth Amendment of the United States Constitution ("Fourteenth Amendment"); "Stigma Plus"; New York Education Law §§ 3020 and 3020-a ("Section 3020-a"); common law fraud in the inducement; the New York City Human Rights Law, N.Y. CITY ADMIN. CODE §§ 8-101 *et seq.* ("NYCHRL"); the New York State Human Rights Law, N.Y. EXEC. LAW §§ 290 *et seq.* ("NYSHRL"); N.Y.C. ADMIN. CODE § 8-107(3)(a); "those parts of the New York State Constitution which similarly apply with like language"; and "[s]tate laws governing employment, bodily integrity, and freedom of religion, in procedure and substance." Compl. ¶ 2.

[6] To the extent that Plaintiffs raise claims under Section 1988 and Section 242, Compl. ¶ 2, these claims are dismissed because Plaintiffs cannot seek relief under either statute. Defendants argue that Plaintiffs cannot pursue relief under either Section 1988 or Section 242. Mot. at 24-25. The Court agrees. Section 1988 does not provide an independent cause of action. *Weiss v. Violet Realty, Inc.*, 160 F. App'x 119, 120 (2d Cir. 2005). Additionally, 18 U.S.C. § 242 is a criminal statute and does not provide a private right of action. *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011). Accordingly, Defendants' motion to dismiss Plaintiffs' claims arising out of Section 1988 and Section 242 is granted and any such claims are dismissed.

[7] In their second cause of action, Plaintiffs allege that they were deprived of due process in violation of the First, Fifth and Fourteenth Amendments. Compl. ¶ 113. This case implicates the Due Process Clause of the Fourteenth Amendment because it involves actions of state actors. *See Eubanks v. Hansell*, 22-cv-6277(KAM)(JRC), 2024 WL 1308672, at *4 (E.D.N.Y. Mar. 26, 2024) ("The Fifth Amendment Due Process Clause protects against the actions of the federal government, whereas the Fourteenth Amendment Due Process Clause protects against the actions of state actors." (citing *Darnell v. Pineiro*, 849 F.3d 17, 21 n.3 (2d Cir. 2017))).

Sections 3020 and 3020-a the NYSHRL, the NYCHRL, New York City Administrative Code § 8-107(3)(A), and the New York Constitution.

## A. Improper Service

Defendants move to dismiss all claims against Rodi based on improper service, asserting that Rodi was not properly served because she was served at 100 Church Street, which was not her actual place of business, dwelling place, or usual place of abode, and no one at that address is authorized to accept service on her behalf. Mot. at 22-23. Plaintiffs respond that the summons on Rodi at 65 Court Street was redirected to "the NYC Law Department at 100 Church Street." Opp'n at 20-21.

The Court must address this jurisdictional question first. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016). "A plaintiff may serve an individual in federal court as provided by Federal Rule of Civil Procedure 4(e), including but not limited to by following the law of the state where the district court is located." *Trabacchi v. Dep't of Educ. of N.Y.C.*, 24-CV-6123 (RPK) (TAM), 2025 WL 2922708, at *6 (E.D.N.Y. July 31, 2025) (quoting *Guthrie v. Rainbow Fencing Inc.*, 21-CV-5929 (KAM) (RML), 2025 WL 871649, at *4 (E.D.N.Y. Mar. 20, 2025)). New York Civil Practice Law and Rules Section 308 allows service by, *inter alia*, "personal delivery, delivery and mailing, and nailing and mailing, respectively." *Parisi v. Fretta*, 542 N.Y.S.2d 713, 714 (2d Dep't 1989). "New York law requires strict compliance with both the personal delivery and mailing requirements of CPLR § 308(2)." *Asset Recovery 23, LLC v. Gasper*, 15 CV 5049 (RJD) (CLP), 2018 WL 5849763, at *6 (E.D.N.Y. Sep. 11, 2018), *report & recommendation adopted*, 2018 WL 5847102 (E.D.N.Y. Nov. 8, 2018). The Court may exercise its discretion in determining whether "to dismiss the action or quash the improper service and extend the time for service." *Williams-*

*Steele v. Trans Union*, 12 Civ. 310(GBD)(JCF), 2013 WL 3892813, at \*3 (S.D.N.Y. July 29, 2013).

Plaintiffs' proof of service indicates that Rodi's summons was served on "A. Boebler" at the "NYC Law Department" at 100 Church Street, New York City, New York. Summons in a Civil Action at 2, Dkt. 7. This address is different from the addresses of 65 Court Street provided in Plaintiffs' proposed summons. *See* Summons in a Civil Action at 1, Dkt. 3. Nevertheless, the Court does not dismiss the claims against Rodi for improper service. For the reasons stated further herein, Plaintiffs are granted leave to file an amended complaint so Plaintiffs shall be permitted to properly serve their amended complaint upon the named defendants. *See Trabacchi*, 2025 WL 2922708, at \*7 (recommending that the court decline to dismiss based on improper service and recommending that the plaintiff be allowed to cure her deficient service by properly serving her amended complaint upon any defendants named in the amended complaint).

### B. Exhaustion of Administrative Remedies

Defendants next move to dismiss Plaintiffs' "federal statutory claims" to the extent that they assert claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), for failure to exhaust their administrative remedies. Mot. at 5-6. In their Opposition, Plaintiffs state that they "exhausted their administrative remedies available to them." Opp'n at 3.

A plaintiff seeking to bring a claim pursuant to the ADA or Title VII "must exhaust administrative remedies through the EEOC." *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018). In order to exhaust administrative remedies, a plaintiff must file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1); *Tewksbury v. Ottaway Newspapers*, 192

F.3d 322, 325-28 (2d Cir. 1999). Then, "a claim must be filed in federal court within 90 days of the plaintiff's receipt of a right-to-sue letter from the [EEOC]." *Johnson v. St. Barnabas Nursing Home*, 368 F. App'x 246, 248 (2d Cir. 2010); 42 U.S.C. § 2000e-5-(f)(1); *id.* § 12117(a).

In their Opposition, Plaintiffs solely state that they "exhausted their administrative remedies available to them," Opp'n at 3; they do not, however, allege facts showing that they filed a charge with the EEOC within 300 days of the alleged discrimination, *see generally* Compl.; Opp'n. While Defendants assert that Badillo filed a charge of discrimination with the EEOC, Mot. at 6; Declaration of Shinequa Charles ("Charles Decl."), Exhibit B, Dkt. 12-4 ("Badillo Charge of Discrimination"), Plaintiffs do not allege facts showing that Badillo received a notice of right to sue. Thus, Plaintiffs have not plausibly alleged that they exhausted administrative remedies through the EEOC.

Accordingly, to the extent that Plaintiffs assert claims under Title VII or the ADA, Defendants' motion to dismiss such claims is granted and such claims are dismissed.

### C. Statute of Limitations

Defendants argue that Plaintiffs' claims for failure to accommodate, religious discrimination, and retaliation under § 1983 should be dismissed as untimely.[8] Mot. at 7-9. Defendants assert that these claims accrued when Plaintiffs' requests for exemptions were denied. *Id.* at 8. Plaintiffs do not address this argument in their Opposition.

"The statute of limitations for a § 1983 claim is determined by state law, but federal law governs when a § 1983 claim accrues." *Billeris v. Inc. Vill. of Bayville*, 694 F. Supp. 3d 214, 226

---

[8] The statute of limitations is an affirmative defense. *See Michael Grecco Prods, Inc. v. RADesign, Inc.*, 112 F.4th 144, 149 (2d Cir. 2024) (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)); FED. R. CIV. P. 8(c)(1). However, a defendant may raise the statute of limitations as an affirmative defense in a Rule 12(b)(6) motion and dismissal thereupon is only appropriate "if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Michael Grecco*, 112 F.4th at 150 (quoting *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015)). Here, the Court is able to determine whether Plaintiffs' claims are barred as a matter of law based on the facts alleged in their Complaint.

(E.D.N.Y. 2023) (citing *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023)). The statute of limitations for a § 1983 claim in New York is three years.[9] *Id.* at 227. Plaintiffs filed their Complaint on April 4, 2025. Accordingly, Plaintiffs' § 1983 claims based on conduct that accrued before April 4, 2022, are time-barred.

### 1. Religious Discrimination Claims

First, the Court addresses whether Plaintiffs' claims of religious discrimination arising under the First and Fourteenth Amendments on a failure-to-accommodate theory are time-barred.

For statute-of-limitations purposes, a failure to accommodate is a discrete act that does not give rise to a continuing violation and accrues when the accommodation is denied. *See Kornmann v. City of New York Bus. Integrity Comm'n*, 467 F. Supp. 3d 54, 61 (E.D.N.Y. 2020) (citing *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016)). Plaintiffs allege that they were discriminated against by Defendants' failure to accommodate them when Defendants denied their religious exemption requests. Compl. ¶¶ 105, 108, 136. Thus, their claims accrued on the date when their exemption requests were denied. Badillo's failure-to-accommodate claim accrued on February 15, 2022, and Matyas and Mendoza's failure-to-accommodate claim accrued on March 28, 2022, when their appeals for religious exemptions were denied. Compl. ¶¶ 74, 87, 100. Therefore, their discrimination claims would have been timely if filed by February 15, 2025, and

---

[9] Plaintiffs' claims against all Defendants are subject to this statute of limitations. Under a "*Monell*" theory of § 1983, the NYC DOE may be liable for unconstitutional actions by its employees where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City]'s officers." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). The statute of limitations for a claim arising under *Monell* is three years. *See Stokes v. Slayton*, 5:24-cv-00499 (BKS/ML), 2025 WL 2096968, at *5 (N.D.N.Y. July 25, 2025); *Laboy v. Ontario County*, 318 F. Supp. 3d 582, 587 (W.D.N.Y. 2018). But a cause of action under *Monell* against the municipality "does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.'" *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995). Regardless, the accrual dates as to Plaintiffs' claims against NYC DOE are the same as the dates on which they were either denied appeal (for their discrimination claims) or terminated (for their retaliation claims) because Plaintiffs challenge an official NYC DOE policy, of which they were aware when their appeals were either denied or terminated. Thus, the following analysis applies to Plaintiffs' constitutional claims against all Defendants.

March 28, 2025, respectively.  However, Plaintiffs brought this action on April 4, 2025.  Therefore, their religious discrimination claims in violation of the First and Fourteenth Amendments are untimely.

Accordingly, Defendants' motion to dismiss Plaintiffs' religious discrimination claims arising under the First and Fourteenth Amendments as time-barred is granted.

### 2.  Retaliation and Takings Clause Claims

Next, the Court addresses whether Plaintiffs' claims for retaliation in violation of the First Amendment and Fourteenth Amendment Due Process Clause and violation of the Fourteenth Amendment Takings Clause are time-barred based on when the retaliatory conduct accrued.

Termination constitutes an adverse employment action sufficient to support a retaliation claim.  *See Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).  Retaliatory acts become actionable on the day they occurred.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *Van Allen v. N.Y.C. Sch. Constr. Auth.*, 17-CV-2176 (NGG) (VMS), 2018 WL 4783966, at *4-5 (E.D.N.Y. Sep. 30, 2018).  Plaintiffs allege that their retaliation claims arise out of their terminations.  *See* Compl. ¶¶ 112-34.  Therefore, their retaliation claims accrued when they were terminated.  Further, a Takings Clause claim accrues "when a plaintiff knows or has reason to know that the government took his or her property without just compensation."  *Billeris*, 694 F. Supp. 3d at 227 (quoting *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444, 450 (W.D.N.Y. 2020)).  Plaintiffs allege that their Takings Clause claims arise out of Defendants' denial of "their property interests in keeping their jobs," Compl. ¶ 118, and thus arise out of their terminations.  Therefore, their Takings Clause claims also accrued when they were terminated.  Matyas and Mendoza were terminated on April 11, 2022, Compl. ¶¶ 75, 89, so their retaliation and Takings Clause claims are not time-barred.  However, Badillo was terminated on

March 17, 2022, Compl. ¶ 102, so her retaliation and Takings Clause claims are time-barred and dismissed.

Accordingly, Defendants' motion to dismiss Plaintiffs' retaliation and Takings Clause claims is granted in part and denied in part.

### 3. Equal Protection Clause Claims

Finally, the Court addresses whether Plaintiffs' claims of discrimination and retaliation in violation of the Fourteenth Amendment Equal Protection Clause are time-barred.

An Equal Protection Clause claim accrues when the plaintiff became aware of their alleged injury. *See Billeris*, 694 F. Supp. at 229. Plaintiffs' Equal Protection Clause claims arise out of Defendants' alleged failure to provide them with a Section 3020-a hearing and by making the Vaccine Mandate a condition of employment. *See* Compl. ¶¶ 131-32. Thus, their Equal Protection Clause claim accrued as early as December 1, 2021, when the Vaccine Mandate became enforceable and are thus time-barred. Even if Plaintiffs argue that their claims accrued when Plaintiffs' requests for a Section 3020-a hearing were denied on February 15, 2022, and March 28, 2022, their Equal Protection claims remain time-barred.[10]

Accordingly, Defendants' motion to dismiss Plaintiffs' failure to accommodate, religious discrimination, and retaliation claims under § 1983, Mot. at 7-8, is granted in part and denied in part. Plaintiffs' religious discrimination claims and all claims arising under the Equal Protection Clause are time-barred and dismissed. Badillo's First Amendment retaliation claims and Fourteenth Amendment Takings Clause claims are time-barred and dismissed. Because Matyas's

---

[10] Notwithstanding the fact that their Equal Protection claims are time-barred, Plaintiffs fail to allege that they were treated differently from others similarly situated beyond a conclusory allegation, *see* Compl. ¶¶ 12, 28, 106, and thus fail to adequately plead an Equal Protection claim. *Jean v. Dep't of Educ. of N.Y.C.*, 24-CV-02264, 2025 WL 2782533, at *5 (E.D.N.Y. Sep. 30, 2025) ("To state an Equal Protection claim based on a theory of selective enforcement, a plaintiff must plausibly allege that she was treated differently from others similarly situated based on impermissible considerations, such as race, religion, or the exercise of a constitutional right." (citing *Cine Sk8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)).

and Mendoza's First Amendment retaliation claims and Fourteenth Amendment Takings Clause claims are not time-barred, the Court proceeds to determine whether they are plausibly alleged.

## D.  First Amendment Claims

Matyas and Mendoza allege that Defendants terminated them violation of the First Amendment.  *See* Compl. ¶¶ 124-34.  Defendants argue that Plaintiffs do not plausibly allege a violation of the Free Exercise Clause or the Establishment Clause of the First Amendment due to Second Circuit precedent finding the Vaccine Mandate and Arbitration Agreement non-violative of the Free Exercise Clause and Establishment Clause.  Mot. at 11-13.  Plaintiffs counter that they were denied under the "old, constitutionally defective policy" and never given a remediation through Citywide Panel review, which process the Second Circuit has determined was unconstitutional.  Opp'n at 23-24.  Plaintiffs additionally assert that they have plausibly alleged First Amendment violations because the accommodation policies implementing the Vaccine Mandate make "facial denominational preferences and documented hostility to non-preferred beliefs."  Opp'n at 24.  The Court takes each argument in turn.

### 1.  Accommodation Process Challenge

Plaintiffs allege that Defendants violated their First Amendment rights and "unlawfully discriminated against Plaintiffs as to the terms, conditions and privileges of employment, in that Defendants did not allow Plaintiffs to practice their religion, which caused them to be terminated unlawfully; Defendants refused to honor Plaintiffs' right to a 3020-a hearing under Education Law §§3020 and 3020-a."  Compl. ¶ 122.  In their Opposition, Plaintiffs clarify their allegation, asserting that they were subject to an accommodation process that was previously determined by the Second Circuit to violate the First Amendment.  Opp'n at 24 (first citing *Kane v. De Blasio*, 19 F.4th 152, 167-70 (2d Cir. 2021) (per curiam) ("*Kane I*"); and then citing *New Yorkers for*

*Religious Liberty, Inc. v. City of New York*, 121 F.4th 448, 453-64 (2d Cir. 2024), *amended and superseded by New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319 (2d Cir. 2025)). Defendants argue that Plaintiffs' reliance on *New Yorkers for Religious Liberty* is "misplaced," and they still fail to allege a First Amendment violation. Reply at 5-6.

In *Kane I*, the Second Circuit determined that the procedures implemented by the Arbitration Agreement as to the plaintiffs in that case "likely violated the First Amendment." *Kane*, 19 F. 4th. at 167; *see New Yorkers for Religious Liberty*, 125 F.4th at 324 (stating that, in *Kane I*, the Second Circuit "made the 'exceedingly narrow' determination that the [appellants] were likely to succeed on their as-applied challenges based on the City's own admission of a potential defect in how it initially reviewed requests for religious accommodations for and exemptions from the [Vaccine Mandate]"). The Second Circuit directed the City to reconsider the plaintiffs' religious accommodation requests by a central citywide panel, which would adhere to Title VII. *Kane I*, 19 F.4th at 162. As a result, the "newly constituted" Citywide Panel reviewed religious accommodation requests anew. *New Yorkers for Religious Liberty*, 125 F.4th at 325. The Second Circuit has since determined that this renovated process did not violate the Establishment Clause or the Free Exercise Clause. *Id.* at 330-32.

To the extent that Plaintiffs assert a violation of the First Amendment because they were not afforded review by the updated process mandated by the *Kane I* court, Opp'n at 24, this assertion is directly contradicted by the Complaint. Plaintiffs do not assert that they were subjected to the process reviewed by the *Kane I* court as unconstitutional; rather they state that their claims were subject to review by the Citywide Panel. *See* Compl. ¶ 74 ("[Matyas] then submitted her Religious accommodation to the Citywide Panel, set up in November 2021"); Exhibit 12; Compl.

¶ 87 ("[Mendoza's] RA was received by the Citywide Panel"); Exhibit 20; Compl. ¶ 100 ("[Badillo's] RA was sent to the Citywide Panel."); Exhibit 30.

Accordingly, the Court sees no basis to apply the "exceedingly narrow" determination by the Second Circuit in *Kane I* to Plaintiffs' claims here. The Court now turns to whether Plaintiffs have plausibly alleged either a violation of the Free Exercise Clause or the Establishment Clause.

### 2. Free Exercise Clause Claim

Plaintiffs generally assert that the Defendants violated the Free Exercise Clause. *See* Compl. ¶¶ 2, 111. Defendants argue that Plaintiffs' Free Exercise Clause claim should be dismissed because the Vaccine Mandate has already been found to be neutral and generally applicable and thus not a violation of the Free Exercise Clause. Mot. at 12.

The Court first addresses whether Plaintiffs plausibly allege a facial challenge to the Vaccine Mandate as a violation of the Free Exercise Clause. *See* Compl. ¶ 111. Plaintiffs rely on the *Kane I* holding to argue that the Second Circuit has held the policies implementing the Vaccine Mandate were not neutral or generally applicable. Opp'n at 23-24. However, the *Kane I* court's holding that the Vaccine Mandate did not violate the Free Exercise Clause was not disturbed by its finding that the initial accommodation process needed to be revised. *See New Yorkers for Religious Liberty*, 125 F.4th at 324. The First Amendment's "Free Exercise Clause [] protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'" *Kane I*, 19 F.4th at 163-64 (quoting *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014)). However, this protection "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Id.* at 164 (quoting *Employment Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872, 879 (1990)). The Second Circuit has already

determined that "[t]he Vaccine Mandate, in all its iterations, is neutral and generally applicable." *Id.*; *see also Ruscelli*, 2026 WL 381642, at *6. It is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy, or statute that burdens a religious practice as long as the government can demonstrate a rational basis for the enforcement of the policy, and the burden is only an incidental effect, rather than the object, of the law. *Smith*, 494 U.S. at 879. Therefore, because the Vaccine Mandate has been found to be generally applicable and neutral, there need only be a rational basis for its enforcement via the Arbitration Agreement. *See Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002); *see Kane I*, 19 F. 4th at 164. The Second Circuit has found that the mandate plainly satisfies rational basis review and was a reasonable exercise of the State's power to protect public health. *Kane I*, 19 F.4th at 166. The Second Circuit held the *Kane I* finding remains binding against a Free Expression Clause challenge to the Citywide Panel System. *New Yorkers for Religious Liberty*, 125 F.4th at 330. Thus, any attempt by Plaintiffs to facially challenge the Vaccine Mandate cannot survive.

Next, the Court analyzes whether Plaintiffs assert a plausible "as-applied" challenge to the Vaccine Mandate and accommodations process.[11] *See* Compl. ¶ 122; Opp'n at 23-24. The Second Circuit has already addressed whether the Vaccine Mandate can survive an "as-applied" challenge in *New Yorkers for Religious Liberty*, 125 F.4th at 332-35. There, the Second Circuit affirmed the district court's dismissal because the complaint identified the panel's undue-hardship rationale, but did not plead allegations that contradict the finding and instead only offered threadbare conclusions. *Id.* at 333. In order to challenge the accommodation process, Plaintiffs must make "a more-than-conclusory allegation that the finding of undue hardship was erroneous or

---

[11] *See Hurley v. Dep't of Educ. of City of N.Y.*, 24-CV-1664 (NRM) (LKE), 2025 WL 2711471 (E.D.N.Y. Sep. 23, 2025) (construing the plaintiff's challenge to the Vaccine Mandate's exemption and accommodation process as an "as-applied" challenge under the First Amendment).

pretextual." *Id.* (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)). In their Complaint, Plaintiffs challenge the Citywide Panel's finding that Plaintiffs' accommodation requests presented "undue hardship" or "undue burden." *See* Compl. ¶¶ 87, 108; Exhibit 12 at 152; Exhibit 20 at 176; Exhibit 30 at 200. However, Plaintiffs make only one conclusory allegation that this finding was erroneous or pretextual. *See* Compl. ¶ 107. This is insufficient. *See Hurley v. Dep't of Educ. of N.Y.C.*, 24-CV-1664 (NRM) (LKE), 2025 WL 2711471, at *12 (E.D.N.Y. Sep. 23, 2025) (quoting *New Yorkers for Religious Liberty*, 125 F.4th at 335) (finding that the plaintiff failed to assert an as-applied challenge because her pleading stated that her appeal was denied based on "undue burden" and therefore suggested that her exemption request was denied "on the independent ground of undue hardship").

Accordingly, Defendants' motion to dismiss Plaintiffs' Free Exercise Clause claim is granted and this claim is dismissed.

### 3. Establishment Clause Claim

Plaintiffs generally assert that the Defendants violated the Establishment Clause. *See* Compl. ¶¶ 2, 111. For their part, Defendants argue that this Court should dismiss Plaintiffs' Establishment Clause claim because "Plaintiffs have failed to plead facts suggesting that the mandate advanced or inhibited religion or showed preference to any particular religion." Mot. at 13. Plaintiffs do not directly respond to this argument in their Opposition. *See generally* Opp'n.

A plaintiff can show a violation of the Establishment Clause by pleading facts that show the government enacted laws "that have the 'purpose' or 'effect' of 'advancing or inhibiting religion'" or "'grant[] a denominational preference' by preferring one religion over another." *New Yorkers for Religious Liberty*, 125 F.4th at 330 (first quoting *Agostini v. Felton*, 521 U.S. 203, 222-23 (1997); and then quoting *Larson v. Valente*, 456 U.S. 228, 244-46 (1982)). Plaintiffs have

not asserted any facts to suggest that Defendants preferred certain religions over others or acted out of religious animus when they were terminated.  *See New Yorkers for Religious Liberty*, 125 F.4th at 330-332 (affirming the district court's dismissal of the plaintiffs' challenge of the vaccine mandate because the plaintiffs did not assert any facts to "to suggest that the Citywide Panel preferred certain religions over others or was infected with religious animus").

Accordingly, Defendants' motion to dismiss Plaintiffs' First Amendment claim for violation of the Establishment Clause is granted, and this claim is dismissed.

### E.  Fourteenth Amendment Claims

Plaintiffs allege that they were deprived of their right to procedural due process under the Due Process Clause of the Fourteenth Amendment when they were terminated because they have a property interest in their employment and pay.  Compl. ¶¶ 118-20.  Defendants argue that Plaintiffs fail to plausibly allege a liberty interest as required to assert a violation of procedural due process.  Mot. at 20-22.

The Court must conduct a two-step inquiry of Plaintiffs' procedural due process claim to determine (1) whether Plaintiffs possessed a liberty or property interest and, if so, (2) what process they were due before they could be deprived of that interest.  *See Broecker v. N.Y.C. Dep't of Educ.*, 573 F. Supp. 3d 878, 888 (E.D.N.Y. Nov. 24, 2021) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)), *aff'd*, 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023), *and aff'd*, 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023); *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (explaining that to allege a deprivation of liberty without sufficient process, a complaint must assert (1) that [the plaintiff] possessed a cognizable liberty interest, and (2) that the defendants deprived her of that same liberty without providing process adequate to justify their actions").

### 1. Liberty Interest

Plaintiffs make passing reference to a "stigma plus" claim in connection to the placement of a problem code on their employee file, thereby impairing their ability to secure future employment and depriving them of a liberty interest. Compl. ¶¶ 2, 61, 62, 63, 64. Defendants argue that Plaintiffs fail to allege either a "stigma" or a "plus" to satisfy a deprivation of a due process liberty interest. Mot. at 20-21. Plaintiffs do not respond to this argument in their Opposition. *See generally* Opp'n.

A "stigma plus" claim "requires a plaintiff to allege (1) the utterance of a statement about her that is injurious to her reputation, 'that is capable of being proved false, and that he or she claims is false,' and (2) 'some tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'" *Velez*, 401 F.3d 75 at 87 (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds, Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 123 (2003)). Plaintiffs' claims of a problem code fail to meet the first prong of this standard because they do not allege that the problem code was publicly disclosed. *See id.* (citing *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631 (2d Cir. 1996) ("The defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest.")). Furthermore, courts in this Circuit have held that allegations of a violation of due process arising out of placement on the NYC DOE's problem code database are insufficient to support a stigma plus claim where no statement about the plaintiff was published outside of the agency. *See Fugelsang v. Dep't of Educ. of N.Y.C.*, 23-cv-08332 (LDH) (LKE), 2025 WL 974276, at *7 (E.D.N.Y. Mar. 31, 2025) (collecting cases). Plaintiffs do not allege that their problem code status

was advertised outside of NYC DOE. Thus, Plaintiffs' Due Process Clause claim arising based on a "stigma plus" theory must be dismissed.

### 2. Adequate Process

Notwithstanding dismissal of Plaintiffs' stigma plus claim, Plaintiffs assert they had a property interest in their employment as public employees of NYC DOE. Compl. ¶ 114. Public employees have a protected property interest in their continued employment. *See Broecker*, 573 F. Supp. 3d at 888. Thus, the Court proceeds to analyze whether they have adequately pled that they were not afforded adequate process.

Courts in this District have previously determined that the pre-deprivation and post-deprivation processes afforded to NYC DOE employees after the Vaccine Mandate "were and are constitutionally adequate," *id.* at 888-89 (determining that the Vaccine Mandate process provided the plaintiffs with multiple avenues to challenge and address the actions taken against them), and the terminations for failure to comply do not violate due process, *see Garland v. City of New York*, 665 F. Supp. 3d 295, 307 n.8 (E.D.N.Y. 2023); *see also Trabacchi*, 2025 WL 2922708, at *17-18.

Here, Plaintiffs have not plausibly alleged that they did not receive adequate process. According to the Complaint, Plaintiffs received pre-deprivation notice: they were informed of the Vaccine Mandate, the ability to seek religious exemptions and appeals, placement on LWOP if they were noncompliant with the Vaccine Mandate, and their options and opportunity to respond. *See* Compl. ¶ 52; Exhibit 4; Exhibit 5. They were notified on September 10, 2021, and October 2, 2021, that they would be placed on LWOP as of October 4, 2021. Compl. ¶¶ 52, 55; Exhibit 4; Exhibit 5. *See Broecker*, 573 F. Supp. 3d at 888 (identifying the same foregoing procedures that were afforded to the plaintiffs and determining they were adequate pre-deprivation procedures).

Additionally, Plaintiffs received adequate post-deprivation notice. Their termination under the Vaccine Mandate does not qualify them for a Section 3020-a hearing,[12] and they do not allege that they were prevented from filing exemption appeals. *See Trabacchi*, 2025 WL 2922708, at *18. Indeed, Plaintiffs allege that they had the ability to seek religious exemptions and appeals. *See* Compl. ¶¶ 72-74, 81-87. To the extent that Matyas sought and was denied an Article 78 hearing, Mot. at 20; Charles Decl., Exhibit D, Dkt. 12-6, due process was further satisfied. *See Broecker v. N.Y.C. Dep't of Educ.*, 23-655, 2023 WL 8888588, at *2 (2d Cir. Dec. 26, 2023); *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes.").

Accordingly, Defendants' motion to dismiss Plaintiffs' claim for violation of Due Process under the Fourteenth Amendment is granted, and this claim is dismissed.

### 3. Takings Clause

Plaintiffs allege that the Vaccine Mandate violated their rights under the Fifth Amendment Takings Clause[13] by denying the property rights to their employment without just compensation. *See* Compl. ¶¶ 112-23. Defendants move to dismiss Plaintiffs' due process claims to the extent they arise under the Fifth Amendment, *see* Mot. at 19-20; Reply at 9, but do not address Plaintiffs' Takings Clause claims. *See generally* Motion; Reply. The Court may *sua sponte* dismiss a complaint if it "fails to state a claim on which relief may be granted." 28 U.S.C.

---

[12] "Under New York law, 'the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth in N.Y. Educ. Law §§ 3020, 3020-a, or N.Y. Civil Service Law § 75.'" *Trabacchi*, 2025 WL 2922708, at *18 (quoting *Broecker*, 585 F. Supp. 3d at 318-19). The Vaccine Mandate creates a condition of employment, so terminations due to an employee's failure to comply with the condition does not violate due process. *See id.* (citing *Garland*, 665 F. Supp. 3d at 307 n.8; *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436 (S.D.N.Y. 2022)).

[13] The Fifth Amendment Takings Clause is applied to states under the Fourteenth Amendment. *Tyler v. Hennepin County*, 598 U.S. 631, 637 (2023).

§ 1915(e)(2)(B)(ii); *Kirby v. Cruz.*, 24-2373, 2025 WL 2886488, at \*1 (2d Cir. Oct. 10, 2025). Accordingly, the Court examines whether Plaintiffs plausibly allege a Fourteenth Amendment Takings Clause claim.

To the extent that Plaintiffs allege a regulatory taking,[14] they fail to plausibly allege a violation of the Takings Clause. A regulatory taking may occur if the government interferes with an individual's contractual right by instituting "[a] public program [which] adjust[s] the benefits and burdens of economic life to promote the common good." *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006) (quoting *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). Plaintiffs do not specify whether they allege a categorical or non-categorial regulatory taking. "A regulatory taking can either be categorical in nature, where a regulation 'completely deprive[s] an owner of *all* economically beneficial use of her property,' . . . or a non-categorical taking, which 'requires an intensive *ad hoc* inquiry into the circumstances of each particular case.'" *McCartney v. City of New York*, 23-CV-8232 (NRM) (JAM), 2025 WL 2711429, at \*6 (E.D.N.Y. Sep. 23, 2025) (first quoting *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005); and then quoting *Buffalo Tchrs.*, 464 F.3d at 375). Regardless, to the extent that Plaintiffs allege a property interest in their contractual rights, the Vaccine Mandate did not deprive them of that property because the Vaccine Mandate was promoted for a common good. "[T]he fact that Plaintiffs chose not to receive the COVID-19 vaccine and as a consequence of that choice had their employment with the City terminated does not transform the City's mandate into a regulatory taking." *Id.*

Accordingly, Plaintiffs' claims asserting a violation of the Fourteenth Amendment Takings Clause are dismissed.

---

[14] Plaintiffs have not alleged a physical taking, which requires "the government [to] directly appropriate[] private property for its own use." *E. Enters. v. Apfel*, 524 U.S. 498, 522 (1998).

### F. Individual Liability

Defendants move to dismiss Katherine Rodi as a defendant arguing that Plaintiffs fail to state a plausible claim for relief against her under § 1983. Mot. at 22-24. Plaintiffs respond by pointing to litigation in 2012 in which Rodi described the procedure of placing an employee on a problem code due to misconduct, Opp'n at 6-7, and appear to allege that Rodi played a role in denying "all applications for accommodation sight unseen," *id.* at 4-5.

An individual is liable under § 1983 if that individual is personally involved in the alleged deprivation. *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). Plaintiffs can establish personal involvement by showing that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). A complaint based upon a violation under § 1983 that does not allege facts establishing the personal involvement of an individual defendant is fatal to the § 1983 claim. *See Costello v. City of Burlington*, 632 F.3d 41, 48-89 (2d Cir. 2011).

Plaintiffs allege that Rodi was responsible for deciding which NYC DOE employees were placed on a "problem code" and, through her work at the Office of Personnel Investigations, "punitively blocks anyone from ever getting a job in New York City public schools." Compl. ¶¶ 22, 62. Plaintiffs fail to make any allegations involving Rodi regarding her personal involvement in the challenged conduct. They do not allege that she flagged their personnel files or blocked them from getting a job at another public school. *Contra Trabacchi*, 2025 WL

2922708, at *15 (determining that the plaintiff sufficiently alleged that Rodi was personally involved by claiming that Rodi flagged the plaintiff's personnel file and failed to respond to the plaintiff's email). Even if Plaintiffs did plausibly allege that Rodi was personally involved in the challenged conduct, they have not alleged that she deprived them of a constitutional right because their constitutional claims are either time-barred or insufficiently plead.

Accordingly, Defendants' motion to dismiss defendant Rodi is granted.

### G. State-Law and City-Law Claims

The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law and city-law claims. District courts may decline to exercise supplemental jurisdiction over state-law and city-law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Liberally construed, Plaintiffs' remaining state-law and city-law claims include their claims for fraudulent inducement, religious discrimination, and retaliation based on religion in violation of Sections 3020 and 3020-a, the NYSHRL, the NYCHRL, the New York City Administrative Code § 8-107(3)(A), and the New York Constitution. The Court has dismissed all Plaintiffs' federal claims over which it has original jurisdiction. Therefore, it is appropriate to decline to exercise supplemental jurisdiction over their state- and city-law claims "at this early stage of the litigation." *Bobadilla v. N.Y.C. Health & Hosps. Corp.*, 22-cv-10594 (JGK), 2023 WL 7280478, at *6 (S.D.N.Y. Nov. 3, 2023); *see also Ruscelli*, 2026 WL 381642, at *9 (declining to exercise supplemental jurisdiction over the plaintiff's remaining state and city law claims having dismissed her federal claims in a vaccine mandate case against the NYC DOE).

### H. Leave to Amend

Plaintiffs do not request leave to amend their pleadings, but "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). In particular, *pro se* litigants "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)). However, the decision to grant or deny leave to amend is within the trial court's discretion, and parties need not be granted leave to amend if there is evidence of, *inter alia*, futility. *Saravia v. Royal Guard Fence Co.*, 19-2086 (DRH) (SIL), 2020 WL 5231696, at *9 (E.D.N.Y. Sep. 2, 2020).

It is likely that amendment of Plaintiffs' Complaint would be futile. For instance, Plaintiffs fail to plausibly allege constitutional violations, either because their discrimination claims are time-barred or because their retaliation claims do not assert valid constitutional violations. *See also Trabacchi*, 2025 WL 2922708, at *23-26 (determining that the plaintiffs' state-law and city-law claims were time-barred or failed to state a claim). However, given Plaintiffs' *pro se* status, Plaintiffs shall have 30 days from the filing of this Memorandum and Order to move for leave to amend their Complaint.

Plaintiffs are advised that, should they elect to move for leave to file an amended complaint, such motion shall comply with Federal Rule of Civil Procedure 15, Local Civil Rule 7.1(e), and the Court's Individual Practices and Rules, including by attaching a redlined comparison of the operative pleading and the proposed amended pleading. Plaintiffs are cautioned that they must plead sufficient facts to allege a violation of federal rights or statutes and identify the specific acts by specific defendants that violated their own individual rights. Defendants shall respond to

26

Plaintiff's motion to amend by June 29, 2026, and Plaintiffs shall file a reply, if any, by July 13, 2026.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion is granted. Plaintiffs' Complaint is dismissed in its entirety. Plaintiffs' claims for religious discrimination in violation of the First Amendment and the Fourteenth Amendment are dismissed because they are time-barred. Plaintiffs' claims for retaliation in violation of the Equal Protection Clause and Badillo's claims for retaliation are dismissed as time-barred. Matyas and Mendoza's claims for retaliation in violation of the First Amendment and Fourteenth Amendment Due Process Clause and for violation of the Fourteenth Amendment Takings Clause claims are dismissed for failure to state a claim. Matyas and Mendoza's claims seeking individual liability of Rodi are dismissed for failure to state a claim. Further, the Court declines to exercise supplemental jurisdiction of Plaintiffs' state-law and city-law claims.

Plaintiffs are permitted leave to file a motion to amend the Complaint by May 31, 2026. Plaintiffs are advised that, should they elect to move for leave to file an amended complaint, such motion shall comply with Federal Rule of Civil Procedure 15, Local Civil Rule 7.1(e), and the Court's Individual Practices and Rules, including by attaching a redlined comparison of the operative pleading and the proposed amended pleading. Plaintiffs are cautioned that they must plead sufficient facts to allege a violation of federal rights or statutes and identify the specific acts by specific defendants that violated their own individual rights. Defendants shall respond to

Plaintiff's motion to amend by June 29, 2026, and Plaintiffs shall file a reply, if any, by July 13, 2026.

SO ORDERED.

_/s/_____
ORELIA E. MERCHANT
United States District Judge

May 1, 2026
Brooklyn, New York